UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MISSION TOXICOLOGY, L.L.C., SUN CLINICAL LABORATORY, L.L.C. | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE OF TEXAS, INC., UNITEDHEALTHCARE OF FLORIDA, INC., AND UNITED HEALTHCARE SERVICES, INC., | § | CIVIL ACTION NO. 5:17-cv-01016 |
| | § | |
| | § | JURY DEMANDED |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs Mission Toxicology, LLC ("Mission") and Sun Clinical Laboratory, LLC ("Sun" and collectively with Mission, the "Plaintiffs") file this First Amended Complaint ("Complaint") against Defendants UnitedHealthcare Insurance Company, UnitedHealthcare of

Florida, Inc., UnitedHealthcare of Texas, Inc., and United Healthcare Services, Inc. (collectively, "United" or "Defendants"), and respectfully show the Court as follows:

## I.     PARTIES

**Plaintiffs**

1.    Plaintiffs are entities that perform or performed clinical diagnostic toxicology urinalysis ("UA") testing, blood testing, and allergy testing (hereinafter collectively referred to as "Laboratory Services") pursuant to agreements with hospitals and as ordered by licensed medical providers.

2.    Plaintiff Mission is a limited liability company organized under the laws of the State of Texas whose principal place of business is 2145 NW Military Hwy., Suite 102 San Antonio, Texas 78213.

3.    Plaintiff Sun is a limited liability company organized under the laws of the State of Texas whose principal place of business is a limited liability company organized under the laws of the State of Texas whose principal place of business is 7 Champions Lane, San Antonio, Texas 78257.

**Defendants**

4.    Defendant UnitedHealthcare Insurance Company, Inc. is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut. It operates as a foreign for-profit corporation in Texas. It can be served via its agent for process at CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136 USA. UnitedHealthcare Insurance Company, Inc. fully-insures and administers health plans.

5.    Defendant UnitedHealthcare of Texas, Inc. is a corporation organized under the

laws of the State of Texas, with its principal place of business in the State of Texas. It can be served via its agent for process at CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136 USA. UnitedHealthcare of Texas, Inc. fully-insures and administers plans.

6.     Defendant UnitedHealthcare of Florida, Inc. is a corporation organized under the laws of the State of Florida, with its principal place of business in the State of Florida.  It can be served via its agent for process CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324. UnitedHealthcare of Florida, Inc. fully-insures and administers plans.

7.     Defendant United Healthcare Services, Inc. is a corporation organized under the laws of the State of Minnesota, with its principal place of business in the State of Minnesota. It is a foreign for-profit corporation operating in Texas. It can be served via its agent for process at CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136 USA. UnitedHealthcare Services, Inc. administers plans that are funded by plan sponsors.

## II.     JURISDICTION AND VENUE

8.     This Court has personal jurisdiction over all Defendants in this action, and personal jurisdiction is proper before this Court pursuant to Texas statutes and because Defendants operate, conduct, engage in and carry on business in Texas, have committed, and/or have conspired to commit, and/or have participated in a conspiracy that has committed tortious acts within the state of Texas, targeted towards Texas residents, businesses, or interests. Personal jurisdiction is also proper before this Court pursuant to Texas statutes because Defendants engage in

substantial and not isolated activities within Texas.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
        1331 because it arises under the Constitution, laws, or treaties of the United States.
        Specifically, Plaintiffs assert claims in this case that arise under the Employee
        Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., as
        Plaintiffs act as an ERISA beneficiary by virtue of the assignment of benefits from
        the individual insureds who had contracts with United, and Plaintiffs therefore stand
        as beneficiaries under United plans and seek payment of claims owed under
        employee health and welfare benefit plans that fall within the scope of ERISA.
        Second, Plaintiffs also request declaratory judgment regarding other claims
        discussed below related to these same health and welfare benefit plans for which
        United is an ERISA fiduciary, which, by necessity, involves the interpretation of
        ERISA-governed health and welfare benefits.

        a.   Plaintiffs, as assignees of Defendants' insureds, have exhausted all of their
             administrative remedies and/or, in the alternative, have been prevented from
             meaningful access to Defendants' administrative remedy processes, and/or it
             was futile to engage in Defendants' administrative remedy process because of
             the facts set forth in this Amended Complaint, and therefore Plaintiffs must seek
             redress from this Court for Defendants' violations of federal law, including but
             not limited to ERISA.

        b.   The remedies Plaintiffs seek under the terms of ERISA and under the plans at
             issue are for the benefits due to them pursuant to 29 U.S.C. § 1132(a)(1)(B), an
             award of prejudgment interest on their claims to the date of payment pursuant to

4

governing law, and for an award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

10. Venue is proper in the Western District of Texas pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this action occurred in the Western District of Texas and many of the parties are domiciled or perform substantial acts connected to the Complaint in Texas. Specifically, many of United's health plans and members can be found within this district, many of the Plaintiffs and some of the Defendants are located in this district, and people or businesses related to the case have facilities in this district.

### III.   FACTUAL BACKGROUND

11. Plaintiffs perform Laboratory Services in San Antonio, Texas for many healthcare facilities, referring providers, and hospitals throughout the United States.

12. United is a global health service company that, among other things, insures and administers various employee health and welfare benefit plans, including: (i) self-funded plans for which United provides administrative services, (ii) plans insured under group policies issued by United but maintained by private employers, (iii) plans covering federal employees, (iv) plans covering employees of state governmental entities, (v) church plans, (vi) policies issued to individuals, and (vii) Medicare.

13. United is a health services company that provides health and welfare benefit plans to millions of individuals.

14. Individuals who are part of United's plans are known as "members" or "insureds."

15.     United provides its members with healthcare coverage from medical professionals pursuant to the terms of members' plans.

16.     United is the claims administrator for all of these plans for which Plaintiffs seek relief and, as the authorized claims-review fiduciary of each of the plans at issue, exercises discretionary authority over plan assets and plan administration, including whether to issue reimbursements in response to claims submitted by healthcare providers, such as hospitals and other healthcare facilities.

17.     The majority of United's plans for which Plaintiffs seek relief are governed by ERISA, in that they are non-governmental employee health and welfare benefit plans maintained by employers for the benefit of their employees and do not fall within any ERISA safe-harbor provision.

18.     With respect to the ERISA plans at issue, United exercised its discretion as an ERISA fiduciary in deciding whether to reimburse claims for Laboratory Services. In its capacity as an ERISA fiduciary, United has administered claims denials on behalf of ERISA plans associated with the claims for Laboratory Services.

19.     United exercises its discretion as a claims administrator of each of the plans associated with the claims for Laboratory Services in dispute.

20.     The number of claim denials made by United on behalf of ERISA plans, which Plaintiffs seek relief for, amounts to millions of dollars of Laboratory Services that have been provided to United members that have not been reimbursed.

21.     The types of plans with claims for which Plaintiffs seek relief are (i) administrative services only ("ASO") plans and (ii) fully-insured plans.

**ASO Plans.**

22.     ASO plans are funded by their respective sponsor, generally an employer, and the employer-sponsor's employees' contributions. This means that when services are covered under the plan, the funding for coverage comes from the employer's funds.

23.     United provides administrative services for its ASO plans, pursuant to Administrative Services Agreements it has with the ASO-plan sponsors. The Administrative Services Agreements assign to United the authority, responsibility, discretion, and obligation to determine eligibility for coverage, make factual determinations, make coverage determinations, conduct reviews of denied claims, process and make payment on claims submitted by healthcare providers, and adjudicate plan members' appeals relating to adverse benefits decisions.

**Fully-Insured Plans.**

24.     Fully-insured plans are issued and funded by United. This means that when services are covered under the plan, the funding for coverage comes from United's funds.

25.     Like its role with ASO plans, United is also the administrator of fully-insured plans, and exercises discretion in determining eligibility for coverage, making coverage determinations, conducting reviews of denied claims, making payments on claims submitted by healthcare providers, and adjudicating plan members' appeals relating to adverse benefits decisions.

**Network Providers**

26.     All of United's plans function in accordance with plan documents, which establish, among other things, the rights and responsibilities of the plan.

27.     United's plans allow members to choose to obtain healthcare services from either

network providers or non-network providers.

28.     Network providers are providers with whom United has entered into an agreement pursuant to which United has agreed to reimburse providers at specified rates for medical services provided to United's members. In turn, network providers agree to provide services to United's members, accept reimbursement at specified rates, and not bill United's members for any other amounts, except under limited circumstances.

**Laboratory Services.**

29.     UA tests are commonplace in modern medicine and are utilized as important tools to, among other things, prevent drug abuse, prevent the illegal sale of prescription drugs, and prevent potentially harmful drug interactions.

30.     There are different kinds of UA tests, which range in complexity from screening tests to confirmation testing. Screening tests, also known as point of care ("POC") tests, are used to detect abnormal substances in urine specimen.

31.     POC testing often requires follow-up testing in the form of confirmation testing. When POC testing returns a positive result, confirmation testing can be used to access greater detail regarding the abnormal substance(s) present in the positive specimen. When POC testing returns a negative result, confirmation testing can be used to ensure the accuracy of the negative result.

32.     Confirmation testing utilizes more reliable technology than POC testing and provides a more technically sound qualitative result or, where appropriate, a quantitative analysis, which shows not only whether a drug is in a urine specimen, but also how much of that drug is present.

33.   Confirmation testing can include tests for a variety of substances, generally grouped together in "panels." For example, one panel may include tests for opiates, barbiturates, and marijuana, while another may test for marijuana, amphetamines, and designer drugs.

34.   UA tests are used by a wide variety of healthcare providers because of their vital importance as a tool for healthcare professionals.

35.   In addition to UA testing, Plaintiffs perform certain blood and allergy testing services.

36.   Plaintiffs each perform dozens of different types of laboratory procedures which are billed using approximately two hundred and sixty-six (266) different Healthcare Common Procedure Coding System (HCPCS) codes and Current Procedural Terminology (CPT) codes.

**Plaintiffs' Business Practices**

37.   Plaintiffs are laboratories that specialize in providing Laboratory Services. Plaintiffs are unique in their provision of Laboratory Services because they offer specialized expertise, state-of-the-art technology, and direct contact to laboratory experts.

38.   Plaintiffs are each separate, independent entities that use separate laboratory facilities.

39.   Plaintiffs contracted with rural hospitals including, but not limited to, Newman Memorial Hospital, Inc. ("Newman") to perform medically necessary Laboratory Services on behalf of hospitals that cannot perform the specialized testing performed by Plaintiffs or where the volume of physician orders for Laboratory Services exceeds such hospitals' ability to provide referring providers with the

medically necessary Laboratory Services.

40.     Newman is a network provider who maintains network agreements with United.

41.     Newman and Plaintiffs (hereinafter collectively referred to as the "Providers") received referrals for Laboratory Services from many health care providers who require professional and specialized laboratory services.

42.     Providers often received UA referrals from pain management physicians and addiction treatment facilities. Physicians in these fields generally have a particular need for specialized Laboratory Services.

43.     A normal part of a pain management provider's practice is to test their patients' urine to determine, among other things, whether patients are taking their medication or whether patients are taking other drugs that may interact with their prescribed drugs.

44.     A normal part of an addiction treatment facilities' practice is to test their patients' urine to determine, among other things, whether patients are maintaining sobriety or whether patients are using drugs, the types of drugs patients may be using, and how much of a drug is in the patients' systems.

45.     Hospitals submit claims to third party insurance payors, like United, for benefits on laboratory tests performed on plan members' urine and blood specimens.

46.     Newman's employees located at the sorting station in San Antonio received and accessioned United members' specimens from the referring healthcare providers. Plaintiffs would obtain the specimens from the sorting station and perform the Laboratory Services as ordered by the referring healthcare provider.

47.     Plaintiffs performed medically necessary Laboratory Services on behalf of United

plan members.

48. Plaintiffs, as Newman's contractors, performed medically necessary Laboratory Services that were billed by Newman and its biller to United.

49. These billing practices are widely accepted throughout the healthcare insurance industry.

50. The Social Security Act permits referring laboratories of rural hospitals, in this case, Newman, to bill federal healthcare programs for laboratory services requested by such referring laboratories and performed by reference laboratories, in this case, the Plaintiffs. [1]

51. Newman only billed United, and Plaintiffs only performed services for United-insured patients, when a medical provider ordered the tests and the tests were determined to be medically necessary by the medical provider.

52. Each determination that a particular laboratory test was medically necessary for a particular member was made solely by a medical provider prior to the provision of Laboratory Services by Plaintiffs.

53. Plaintiffs received requisition forms from Newman that contained requests for Laboratory Services that were determined by qualified medical professionals to be medically necessary.

54. Once testing was furnished to the benefit of United members, Newman utilized a contracted, external third-party biller to collect compensation for the services provided.

55. Newman's third-party biller invoiced patients for the medically necessary services

---

[1] Social Security Act § 1833(h)(5)(A)(ii)(I)

Plaintiffs provided.

56.     Millions of dollars of the claims for medically necessary services sent to United have still not been paid. These unpaid claims form the crux of this controversy.

**Background Facts Regarding Plaintiffs' Claims.**

57.     Plaintiffs received an assignment of benefits ("AOB") from individual insureds to whom it provides services, placing it in the shoes of those individuals and entitling Plaintiffs to all rights, title and benefits extending from the coverage policies of Defendants' insureds.

58.     Plaintiffs provided Laboratory Services for thousands of United members. As a matter of standard practice, Plaintiffs adhered to the medical necessity guidelines and requirements of member health plans for the services Plaintiffs rendered for patients covered by United plans.

59.     Newman and its contracted biller submitted thousands of claims for medically necessary Laboratory Services to United for the provision of these services to its members.

60.     The claims at issue are covered services under the terms of group employer-based health plans and are therefore subject to ERISA.

61.     On or about December 16, 2016, United began denying all claims for Laboratory Services, requesting medical records.

62.     In response, Newman's third party biller Integrity Ancillary Management, LLC ("IAM") submitted requisition forms, including the physician orders, and the laboratory results reports for approximately three thousand (3,000) claims for Laboratory Services.

63.     United remitted payment for many of these claims after receiving and reviewing the requested records.

64.     United acknowledged the appropriateness and necessity for the Laboratory Services by reimbursing Plaintiffs for the tests after review of the medical records.

65.     On or about May 5, 2017, United again began denying all Laboratory Service claims submitted by IAM on behalf of Newman, and continued to deny the Laboratory Service claims through the present.

66.     Although United previously accepted the requisition form, including physicians' orders, and the applicable laboratory results reports to evidence the medical necessity for the Laboratory Services, United began denying the Laboratory Service claims and demanded the patients' *entire* medical record for each of the claim submissions citing that the records received were insufficient. An example copy of the requests for records ("Medical Records Request" or "MRR") is attached hereto as Exhibit "A". The MRR's sent by United in response to each claim submission all contained almost identical substance with the exception of the applicable plan member's personal and claim identifying information.

67.     In response to the MRR's, IAM would submit the laboratory results and requisition forms, but United would deny the claims citing that there was insufficient documentation.

68.     In order to ensure that United would never have to pay for the Laboratory Services, United requested members' *entire* medical records.

69.     Only the referring physician has a patient's *entire* medical record. Newman and its contractors, Plaintiffs and IAM, provided the Laboratory Services to United's

members and would not receive or maintain a United members' *entire* medical record which is maintained by the referring medical provider.

70. The requisition forms referring physicians completed to order the Laboratory Services included all information, instructions, and requests necessary to appropriately conduct medically necessary laboratory tests to the benefit of United's members including, but not limited to: (1) identification information necessary to appropriately identify the ordering physician, (2) identification information necessary to appropriately identify a patient (i.e. United's members), (3) identification information necessary to appropriately identify a patient's insurance policy, (4) instruction on how to complete and appropriately order the Laboratory Services, (5) information concerning specimen collection, (6) information identifying the type of laboratory tests ordered by the physician, (7) the patient's execution of the valid and binding assignment of the benefits of such member's health plan benefits, including those benefits at issue in this Complaint, (8) diagnostic codes evidencing the physician's professional diagnosis related to such testing services, (9) additional patient authorizations and consents, and (10) the physician's signature evidencing such physician's order for the Laboratory Services.

71. The laboratory results reports contained information evidencing that the Laboratory Services were performed as ordered by the applicable referring physician.

72. The requisition forms and laboratory results reports contained more than enough information to determine the validity of the claims for the Laboratory Services.

73. United, as one of the largest healthcare insurers in the world, has the capacity to

14

recognize that entities who are providing Laboratory Services independent of the referring physician's practice would never have the member's *entire* medical record. Such a demand for members' *entire* medical records was a malicious and intentional attempt to avoid reimbursing the claims and horde the premiums as ill-gained profits.

74. United, having already conducted a thorough review in which it subsequently reimbursed the claims and having analyzed the Providers' services, denied the additional claims and demanded Providers produce the members' *entire* medical record to avoid reimbursing the claims for Laboratory Services.

75. United instituted a scheme to deny the Laboratory Services claims by requesting medical records inapplicable to the Laboratory Services, failing to appropriately review the medical records received, and issuing blanket denials on all claims for the Laboratory Services.

76. The majority of the Laboratory Services were performed at the request and order of physicians without the capacity to perform complex laboratory tests.

77. United has refused to pay, and continues to deny payment for, approximately 9,756 claims for Laboratory Services.

78. United failed to reimburse approximately $37,440,834.26 of billed charges.

79. United has failed to properly pay for Laboratory Services claims as required pursuant to each members' health benefit plan.

80. As assignees of members' benefits pursuant to the AOBs, Plaintiffs have the legal right to pursue such claims for benefits on behalf of United members.

81. Plaintiffs have exhausted all administrative remedies and extensively tried to settle

their issues with United without success.

**Protection of protected health information pursuant to HIPAA.**

82.  Plaintiffs are healthcare providers who transmit health information in electronic form and are thus "Covered Entities" as defined by Health Insurance Portability and Accountability Act ("HIPAA") regulations at 45 C.F.R. § 160.103.

83.  Pursuant to HIPAA privacy regulations, Protected Health Information (PHI) includes "individually identifying health information . . . transmitted by electronic media; maintained in electronic media; or transmitted or maintained in any other form or medium. . ." 45 C.F.R. § 160.103.

84.  The facts of this case involve medical services and medical claims that include PHI.

85.  Covered Entities may not use or disclose PHI except as permitted by HIPAA privacy regulations.

86.  Disclosure of PHI in a publicly available pleading would be a HIPAA "breach"  as defined at 45 C.F.R. § 164.402.

87.  HIPAA regulations permit the use and disclosure of PHI ***to another covered entity***, such as United, to carry out treatment, payment or health care operations pursuant to 45 C.F.R. § 164.506(b); however, such use and disclosure is strictly limited to another covered entity and disclosure in publicly available pleadings would be an unauthorized use and disclosure of PHI.

88.  Plaintiffs have not published PHI within this Complaint as such publication within this publicly available document would be a breach of Plaintiffs' HIPAA regulatory obligations.

89.  The documents that contain the AOB's from individual insureds also contain

Protected Health Information (PHI) as defined by HIPAA privacy regulations including, but not limited to, patient names, dates of services, diagnoses, physician orders, date of birth, and sex.

90.     In order to avoid the inappropriate disclosure of PHI, Plaintiffs intend to motion this Court, pursuant to FRCP 5.2(d), Local Rule CV-5.2, and 45 C.F.R. § 164.512(e), to each file an AOB for United members (Exhibit "B") whose claims for benefits were denied to demonstrate the applicable assignments to Plaintiffs.

91.     United has refused to pay, and continues to deny payment for, approximately 9,756 claims for Laboratory Services.  Plaintiffs intend to motion this Court, pursuant to FRCP 5.2(d), Local Rule CV-5.2, and 45 C.F.R. § 164.512(e), to file a spreadsheet (the "Unpaid Claims Spreadsheet" a/k/a "Exhibit 'C'") evidencing the claims for medically necessary Laboratory Services that have been denied and remain unpaid by United. The Unpaid Claims spreadsheet contains United members' PHI and claims specific information including, but not limited to, patient names, dates of birth, date the specimen was collected, date the specimen was received, date the specimen was accessioned, charges, and the type of service for each member. Publication of the PHI in a publicly available forum would be an inappropriate disclosure.

92.     Plaintiffs' have attached an example United health plan evidencing plan language, attached hereto as Exhibit "D."

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
(Claim for Benefits under ERISA, 29 U.S.C. § 1132)

93.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

94.     This is an action filed pursuant to ERISA § 502(a)(1)(B), 28 U.S.C. §1132 to recover benefits due to the assignee of the participants or beneficiaries of ERISA plans.

95.     Plaintiffs provided Laboratory Services to the insureds determined to be medically necessary by independent medical providers.

96.     Under the plans administered and/or funded by Defendants, Defendants are obligated to pay for medically necessary services, covered services, covered benefits, and/or laboratory services as defined by the terms of Defendants' insureds' plans. The aforementioned plan terms have been violated by Defendants.

97.     The Laboratory Services furnished by the Providers are recoverable benefits pursuant to the medical necessity and coverage provisions of members' health plans.

98.     Plaintiffs, as assignees, are entitled to recover members' benefits and request such recovery pursuant to 29 USC § 1132(a)(1).

99.      Plaintiffs, as assignees, are entitled to enforce members' rights to benefits for Laboratory Services under the terms of such members' ERISA governed health plans.

100.    Defendants have violated their obligation to pay for medically necessary services pursuant to the medical necessity provisions of each members' plan for which Plaintiffs seek relief pursuant to this Complaint.

101.    Defendants have violated their obligation to pay for covered services pursuant to the covered services provisions of each members' plan for which Plaintiffs seek relief pursuant to this Complaint.

102.   Defendants have violated their obligation to pay for medically necessary laboratory services pursuant to the laboratory service coverage provisions of each members' plan for which Plaintiffs seek relief pursuant to this Complaint.

103.   Defendants have violated their obligation to pay for benefits pursuant to the benefit coverage provisions of each members' plan for which Plaintiffs seek relief pursuant to this Complaint.

104.   Defendants have unlawfully withheld payment for services.  To the extent the Defendants' insureds' plans are issued pursuant to an employee benefit plan, Defendants' failure to pay for the medically necessary services provided by Plaintiffs to its insureds, violates ERISA.  As such, the insureds, and Plaintiffs by assignment, have suffered damages as a result of Defendants' violations.

105.   The insureds have assigned claims to Plaintiffs, including those arising under ERISA.

106.   As assignee of the beneficiaries of the plans at issue, Plaintiffs are entitled to recover the benefits due to the beneficiaries and may enforce the rights of the beneficiaries under the terms of the Defendants' insureds' plans.

### SECOND CLAIM FOR RELIEF
(Breach of Fiduciary Duties under ERISA)

107.   Plaintiffs hereby incorporate all preceding allegations as if each was fully stated herein.

108.   Plaintiffs, as the assignees of ERISA subscribers/members, are entitled to assert a claim for relief for United's breach of the fiduciary duties of loyalty and care under 29 U.S.C. § 1132(a)(3).

109.   United acted as "fiduciary" to Plaintiffs as assignees in connection with the

beneficiaries' group health plans, as such term is understood under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). In its capacity as the insurer, plan administrator, claims administrator and/or fiduciary of ERISA group plans, United is a fiduciary.

110. United breached its duties to Plaintiffs as assignees and members by denying claims for Laboratory Services without valid data or evidence to make such denials, substantiating the failure to pay, and/or denying such claims in an arbitrary fashion, by omitting material information about its determinations from Providers and by denying claims for Laboratory Services in an effort to increase profits.

111. Specifically, United acted as fiduciary to Plaintiffs as assignee and United's members because United exercised discretion in determining whether plan benefits would be paid, and the amounts of plan benefits that would not be paid, to those plan beneficiaries. The exercise of discretion in such determinations of plan benefits is an inherently fiduciary function that must be carried out in accordance with the terms of the plan, not in a manner to maximize profit to United by denying payment to Providers.

112. United put profits before its insureds' health. In an effort to increase profits, United conducted a scheme to deny the claims for Laboratory Services by responding to claims submissions with requests for each insureds' *entire* medical record knowing that a Laboratory Services provider would never have custody of a members' *entire* medical record. Defendants demanded the *entire* medical records even though a review of previous claims submissions by Providers evidenced compliance via requisition forms and laboratory results reports had already taken place, and the

20

aforementioned documentation was then illegitimately deemed insufficient by United on or about May 5, 2017 and thereafter. United failed in its fiduciary capacity when it put profits before its insureds' health and denied covered benefits for Laboratory Services regardless of the necessity of such services, regardless of United's duty to cover such services, and regardless of the services performed.

113.   By engaging in the conduct described above, United failed to act with the care, skill, prudence and diligence that a prudent plan administrator would use in the conduct of an enterprise of like character or to act in accordance with the documents and instruments governing the plan. Fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan. ERISA § 404(a)(1)(B) and (D), 29 U.S.C. §§ 1104(a)(1)(B) and (D). United violated its fiduciary duty of care by, among other things, determining whether plan benefits would be paid, and determining the amounts of plan benefits that would not be paid to those plan beneficiaries based on maximizing profit to United, rather than based on the terms of the plans and applicable statutes and regulations.

114.    As a fiduciary of group health plans under ERISA, United owes beneficiaries a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of beneficiaries. United cannot, for example, make benefit determinations for the purpose of maximizing profit to United at the expense of beneficiaries.

115.   United violated its fiduciary duty of loyalty by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan

benefits that would be paid, to those plan beneficiaries based on maximizing profit to United, rather than based on the terms of the plans and applicable statutes and regulations.

116.  Plaintiffs as assignees are entitled to relief for United's violation of its fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including restitution, injunctive and declaratory relief, and its removal as a breaching fiduciary.

117.   As a direct and proximate cause of United's ERISA breaches, Plaintiffs have been and continue to be damaged in an amount in excess of the jurisdictional limits of the Court.

**THIRD CLAIM FOR RELIEF**
(United's Failure to Provide Full and Fair Review Under ERISA)

118.  Plaintiffs hereby incorporate all preceding allegations as if each was fully stated herein.

119.  United functions as the "plan administrator" within the meaning of such terms under ERISA when it insures a group health plan, or when it is designated as a plan administrator for such plan. As such, Plaintiffs, as assignees, are entitled to assert a claim for relief under 29 U.S.C. § 1132(a)(1)(B).

120.  Although United was obligated to provide a "full and fair review" of all claims, it failed to do so in connection with claims for Laboratory Services, and otherwise failed to make necessary disclosures pursuant to 29 U.S.C. § 1133 (and its regulations).

121.  Members and Plaintiffs, as assignees of the members, are entitled to relief pursuant to 29 U.S.C. § 1132(a)(1)(B) to enforce their right to a full and fair review of United's claim decisions, and to recover benefits denied for United's failure to

conduct a full and fair review.

122. Plaintiffs, as assignees of the members, are entitled to relief pursuant to 29 U.S.C. § 1132(a)(1)(B) to enforce members' rights to a full and fair review of United's claim decisions, and to recover benefits denied due to United's failure to conduct a full and fair review.

123. Plaintiffs were proximately harmed by United's failure to comply with 29 U.S.C. § 1133 and have been damaged in an amount in excess of the jurisdictional limits of the Court.

### FOURTH CLAIM FOR RELIEF
(Unjust Enrichment/Quasi-Contract/Quantum Meruit)

124. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

125. In the event the Court concludes that the terms of Defendants' contracts with its insureds are not enforceable as to Plaintiffs as a provider, and therefore ERISA preemption does not apply, Plaintiffs assert this alternative claim for unjust enrichment, quasi-contract, and/or quantum meruit. Additionally, Plaintiffs assert this fourth claim for relief ("Unjust Enrichment/Quasi-Contract/Quantum Meruit") as to all claims for Laboratory Services performed on behalf of  United members whose health plans are not governed by ERISA or whose plans are otherwise exempted from ERISA pursuant to 29 U.S.C. § 1003(b).

126. Plaintiffs conferred a valuable benefit upon Defendants' insureds and Defendants by, without limitation, delivering services to Defendants' insureds without receiving payment.

127. Defendants accepted payment of insureds' premiums and self-funded plans' administrative fees in exchange for provision of insurance coverage and payment of

23

claims made by insureds, or by their assignees.

128. Defendants knew of, and appreciated, the benefits they received from Plaintiffs.

129. Plaintiffs did not confer these benefits officiously.

130. Under the circumstances alleged herein, it would be unjust for Defendants to retain the benefit it received from Plaintiffs without compensating Plaintiffs, as assignee of Defendants' beneficiaries, in an equivalent amount.

131. Defendants have not compensated Plaintiffs in an amount equivalent to the benefit Plaintiffs conferred upon Defendants.

132. Defendants have therefore unjustly enriched themselves at Plaintiffs' expense.

133. Plaintiffs are therefore entitled to a judgment.

## FIFTH CLAIM FOR RELIEF
(Texas Insurance Code)

134. Plaintiffs hereby incorporate all preceding allegations as if each was fully stated herein.

135. In the event the Court concludes that the terms of Defendants' contracts with its insureds are not enforceable by Plaintiffs as a provider-assignee, and therefore ERISA preemption does not apply, Plaintiffs bring this claim for violations of Texas common law and the Texas Insurance Code as an independent third party-provider. Additionally, Plaintiffs assert this fifth claim for relief ("Texas Insurance Code") as to all claims for Laboratory Services performed on behalf of United members whose health plans are not governed by ERISA or whose plans are otherwise exempted from ERISA pursuant to 29 U.S.C. § 1003(b).

136. The acts and omissions above also constitute violations of Texas common law and the Texas Insurance Code. By arbitrarily delaying and failing to timely pay claims

submitted by Providers, United is in violation of the Texas Prompt Pay Statute, Tex. Ins. Code § 542.058, among other sections. Further, the acts and omissions constitute an illegal boycott or an act of coercion in violation of Tex. Ins. Code § 541.003, as an act of unfair competition within the state of Texas. See also, Tex. Ins. Code § 541.054. As a proximate result of its violations of such regulations and laws, Plaintiffs have been harmed in an amount in excess of the jurisdictional limits of this Court.

137.  Tex. Ins. Code § 542.058(a) provides that:

"Except as otherwise provided, if an insurer, after receiving all items, statements, and forms ***reasonably requested*** and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060[emphasis added]."

138.  Tex. Ins. Code § 542.055 provides, in part, that ". . . Not later than the 15th day or, if the insurer is an eligible surplus lines insurer, the 30th business day after the date an insurer receives notice of a claim, the insurer shall. . . request from the claimant all items, statements, and forms that the insurer ***reasonably believes***, at that time, will be required from the claimant [emphasis added]."

139.  In an effort to avoid penalty for failure to promptly pay claimants pursuant to the Texas Insurance Code, United conducted a scheme to submit MRRs in a bad faith effort to cite the MRRs as grounds that (1) it complied with Tex. Ins. Code § 542.055 and § 542.058(a), (2) that the claimants failed to appropriately respond

with each members' medical record, and (3) United did not have to remit payment for the Laboratory Services since the Providers did not furnish a members' *entire* medical record (which would never be within Providers' possession). A member's *entire* medical record was not reasonably necessary in order to review the Laboratory Services claims nor would United reasonably believe an *entire* medical record was reasonably necessary to review claims for Laboratory Services. The requisition forms and laboratory results reports were more than sufficient to evidence the performance of medically necessary services. United used its scheme whereby it remitted the MRRs and subsequent denials for insufficient documentation in an effort to avoid its obligation to promptly remit payment.

140.    Defendants inappropriately delayed the payment of claims in violation of Tex. Ins. Code § 542.058(a).

**SIXTH CLAIM FOR RELIEF**
(Declaratory Judgment regarding Plaintiffs' Claims for Affirmative Relief)

141.    Plaintiffs incorporate all preceding allegations as if fully set forth herein.

142.    A ripe, justiciable controversy exists between Plaintiffs and Defendants regarding Defendants' refusal to pay claims submitted by Providers.

143.    Pursuant to 28 U.S.C. § 2201 et seq., Plaintiffs are entitled to an order and judgment declaring the following:

      a.    Defendants have failed to comply with their own contracts with their insureds by denying payment of the claims for Laboratory Services.

      b.    Plaintiffs are entitled to be compensated for services provided to Defendants' insureds.

      e.    Plaintiffs maintain all rights and remedies afforded to it under Texas law,

and nothing in a declaratory order and judgment in this case shall affect those rights.

## VII.   DISCOVERY RULE

144.   Plaintiffs incorporate each preceding paragraph as if each was fully stated herein.

145.   Plaintiffs did not know and could not have known, despite the exercise of reasonable diligence, of all the facts underlying its claims prior to this lawsuit.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that Defendants be cited to appear and answer and that the Court enter Judgment against Defendants for the following:

a.      An award of both actual and consequential damages;

b.      Statutory damages;

c.      An award of punitive and exemplary damages;

d.      Equitable relief as requested herein;

e.      Declaratory and injunctive relief as requested herein;

f.      Reasonable and necessary attorneys' fees;

g.      Costs of court;

h.      Expert witness fees;

i.      Prejudgment and post-judgment interest; and

j.      Such other and further relief at law or in equity to which Plaintiffs may be justly entitled.

**JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

/s/ David W. Navarro
David Navarro
State Bar No. 24027683
David Jed Williams
State Bar No. 21518060

ATTORNEYS FOR PLAINTIFFS

Dated: December 1, 2017

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing document with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

Dated: December 1, 2017


*/s/ David W. Navarro*