UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MISSION TOXICOLOGY, LLC, | § | |
| SUN CLINICAL LABORATORY, LLC. | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Case No. 5:17-CV-01016-DAE |
| | § | |
| UNITEDHEALTHCARE INSURANCE | § | |
| COMPANY, UNITEDHEALTHCARE OF | § | |
| TEXAS, INC., UNITEDHEALTHCARE OF | § | |
| FLORIDA, INC., AND | § | |
| UNITEDHEALTHCARE SERVICES, INC., | § | |
| | § | |
| Defendants, | § | |

| | | |
|---|---|---|
| UNITEDHEALTHCARE INSURANCE | § | |
| COMPANY, INC. AND | § | |
| UNITEDHEALTHCARE SERVICES, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Case No. 5:18-CV-347-DAE |
| | § | |
| MICHAEL MURPHY, M.D., JESSE | § | |
| SAUCEDO, JR., SAMANTHA MURPHY, | § | |
| LYNN MURPHY, JULIE PRICER, | § | |
| MISSION TOXICOLOGY, LLC, SUN | § | |
| CLINICAL LABORATORY, LLC, SUN | § | |
| ANCILLARY MANAGEMENT, LLC, | § | |
| INTEGRITY ANCILLARY MANAGEMENT, | § | |
| LLC, ALTERNATE HEALTH LAB, INC., | § | |
| AND LMK MANAGEMENT, LLC, | § | |
| | § | |
| Defendants. | § | |

**INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

Defendants, Michael Murphy, M.D., Jesse Saucedo, Jr., Samantha Murphy, Lynn Murphy, and Julie Pricer, (collectively, the "Individual Defendants"), hereby respectfully submit their Motion to Dismiss Plaintiffs' Complaint ("Motion"), showing the Court as follows:

## FACTUAL BACKGROUND

Plaintiffs UnitedHealthcare Insurance Company and UnitedHealthcare Services, Inc. (collectively referred to herein as "Plaintiffs" or "United") filed their Original Complaint on April 4, 2018 (the "Complaint"). United is a health insurance company that either directly insures or administers ERISA employee health and welfare benefit plans. United provides administrative services for both Self-Funded Plans and Fully-Insured Plans. Complaint at ¶ 73, n. 9. Self-Funded Plans are funded by their respective sponsor, usually an employer, and for these plans United maintains administrative service agreements. *Id.* Fully-Insured Plans are funded by United, and for these plans United issues insurance policies and provides administrative services. "United provides health insurance and/or administration of health plan benefits to insureds or plan participants (i.e. members), pursuant to a variety of health care benefit plans and policies of insurance." *Id.* at ¶ 26. United's plans allow members the flexibility to choose to obtain healthcare services from either in-network providers or out-of-network providers. *Id.* at ¶¶ 27-28. Mission Toxicology, LLC ("Mission"), Sun Clinical Laboratory, LLC ("Sun"), Sun Ancillary Management, LLC ("SAM"), Alternate Health Lab, Inc., and LMK Management, LLC (collectively, the "Labs") are all out-of-network providers.

The Labs are entities that perform diagnostic toxicology urinalysis testing, blood testing, DNA testing, and allergy testing (hereinafter collectively referred to as "Laboratory Services") as ordered by licensed medical providers. The Individual Defendants are individuals who each have varying levels of responsibilities and roles in the different Labs and Integrity Ancillary

Management, LLC ("IAM"). The Labs do not directly interface with any of United's plan members prior to performing Laboratory Services. Instead, it is the physicians and/or healthcare providers that provide medical care and assistance to United's plan members and those first-line providers who determine if, when, and to what extent urinalysis or any other testing is medically necessary. Once they have determined a patient needs medically necessary Laboratory Services, the primary providers send samples to the Labs for testing.

In the course of business, the Labs sometimes work with hospitals to assist them in providing services that the hospitals could otherwise not provide on their own. *Id.* at ¶ 52. Two such hospitals that the Labs worked with were Newman Memorial Hospital ("NMH") and Community Memorial Hospital ("CMH"). *Id.* at ¶ 17. Through contracts with these hospitals, the Labs performed Laboratory Services for many United members and were reimbursed for many of the claims submitted for the services performed. *Id.* at ¶ 5. In late 2016 and 2017, United began denying claims for Laboratory Services performed by the Labs. United's failure to pay the claims led to the Labs filing suit against United in an effort to be reimbursed for services provided to United members. In response, United filed the instant lawsuit, alleging that the Labs defrauded United and that the Individual Defendants each knowingly partook in the alleged fraudulent scheme. *Id.* at ¶ 1.

United's Complaint should be dismissed with respect to the Individual Defendants for several reasons. United's allegations are based on an alleged fraudulent scheme, yet, in alleging fraud, the Complaint is completely devoid of facts alleging specific instances of fraud with respect to the Individual Defendants. Instead United relies on group pleading that fails the particularity requirements of F.R.C.P. 9(b). Moreover, United ignores the fact that the Individual Defendants are protected by the structure of the corporate entities for which they acted. United

also completely ignores the legal implications of seeking amounts paid pursuant to plans governed by the Employment Retirement Income Security Act of 1974 ("ERISA"). As is shown herein, because of the wide-sweeping reach of ERISA, United's state-law claims are subject to preemption and therefore must be dismissed. Furthermore, even if Plaintiffs' state-law causes of action were not subject to ERISA preemption, such causes of action fail under the pleading requirements of the Fifth Circuit.

## STANDARD OF REVIEW

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all well-pleaded facts alleged in the Complaint as true and must construe the allegations in a light that is most favorable to United. *Central Laborers' Pension Fundv. Integrated Elec. Services Inc.*, 497 F.3d 546, 550 (5th Cir.2007). The motion to dismiss should be granted only if the Complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "To survive a rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir.2010). Legal conclusions may provide "the complaint's framework, [but] they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1940, 173 L.Ed.2d 868 (2009).

## ARGUMENT

### I.     Individual Defendants Request an Oral Hearing on the Instant Motion.

As an initial matter, the Individual Defendants respectfully request an oral hearing regarding the instant Motion pursuant to Local Rule CV-7(h). Pursuant to Local Rule CV-7(h), "[t]he allowance of an oral hearing is within the sole discretion of the court." The Court has great deference on whether or not an oral hearing is appropriate, and its ultimate ruling on whether to grant such a hearing would only be reviewed under an abuse of discretion standard. *See Sanders v. Agnew*, 306 F. App'x 844, 848 (5th Cir. 2009).

The Individual Defendants contend that there is good cause for the Court to grant an oral hearing in the instant matter to address 1) the implications of ERISA tracing/preemption; 2) the deficiencies of the Complaint with respect to the Individual Defendants; and 3) other issues raised by the parties, both Plaintiffs and Defendants,[1] in their respective motions to dismiss. Moreover, granting the Individual Defendants' request for oral hearing serves the interest of judicial economy because it would expedite the dismissal of any claims the Court finds are without merit and do not warrant further time and expense to assert or defend. Thus, for these reasons, the Individual Defendants ask that the Court exercise its discretion and grant the request for oral hearing.

### II.     United's Causes of Action Are Subject to Dismissal Because of ERISA Preemption.

Insofar as Plaintiffs seek recovery for moneys paid pursuant to ERISA plans, the conflict preemption provisions of ERISA § 514 (28 U.S.C.  1144(a)) preempt and supersede any and all state law claims, whether derived from legislative enactment or state common law, insofar as such claims relate to ERISA plans.  *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 757–58

---

[1] "Defendants" as used herein refers to all Defendants party to this matter.

(5th Cir. 1990).[2] ERISA's conflict preemption provisions of 29 U.S.C. § 1144(a) preempt and supersede any and all state laws, whether derived from legislative enactment or state common law, provided that the law relates to an ERISA-governed plan. *Hall v. Newmarket Corp, et al.,* 747 F.Supp.2d 711, 715 (S.D.M.S. 2010) (citing *Lee v. E.I. DuPont de Nemours & Co*., 894 F.2d 755, 757–58 (5th Cir.1990)). The Fifth Circuit has recognized the Supreme Court's "connection or reference" test as applicable to the issue of whether state law claims "relate to" an ERISA plan under § 1144(a).  *See Texas Pharmacy Ass'n v. Prudential Ins. Co. of Am.*, 105 F.3d 1035, 1037 (5th Cir.1997); *CIGNA Healthplan, Inc. v. Louisiana*, 82 F.3d 642, 647 (5th Cir. 1996). The phrase "relate to" has been interpreted to apply in a broad and sweeping manner.  *Heimann v. National Elevator Industry Pension Fund*, 187 F.3d 493, 512 (5th Cir. 1999). The term "state law" is defined by ERISA as including "all laws, decisions, rules, regulations, or other State action having the effect of law . . . ." 29 U.S.C. § 1144(c)(1). Preemption will apply even if the state law claims are not specifically designed to affect the ERISA plans or the plans are affected only indirectly. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. 1994) (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 525 (1980)).[3] Here, United's state and common law claims "relate to" employee benefit plans because its claims are premised on the very existence of the employee benefit plans. A claim "relates to" a health benefit plan when the claim is premised on the existence of an employee benefit plan. *Hall v. Newmarket Corp, et al*., 747 F.Supp.2d 711, 715 (S.D.M.S. 2010) (citing *Christopher v. Mobil Oil Corp*., (950 F.2d 1209,

---

[2] While United's Complaint does not explicitly state the majority of member plans at issue are governed by ERISA, upon and information provided in the Complaint, the Exhibits attached thereto, and belief, Defendants contend that this is the case.

[3] Kersh v. UnitedHealthcare Ins. Co., 946 F.Supp.2d 621, 631 (W.D. Tex 2013) (citing *Cefalu v. B.F. Goodrich* Co., 871 F.2d 1290, 1292 n. 5 (5th Cir.1989)) ("A state-law cause of action that relates to an ERISA plan is preempted 'even if the action arises under general state law that in and of itself has no impact on employee benefit plans.").

1220 (5th Cir. 1992)).    United's state and common law claims are premised upon its administration of employee benefit plans.  If United did not administer the benefit plans, it could not have brought state law causes of action against the Individual Defendants.  Thus, these state law claims are subject to ERISA conflict preemption.

ERISA preempts the claims at issue in this matter in part because ERISA's state law preemption power is extremely broad.  ERISA preemption of state law is so broad that it preempts any state law that refers to or has a connection with an ERISA plan even if that law is not specifically designed to affect such plans, affects such plans only indirectly, or is consistent with ERISA's substantive requirements.  *Hook v. The Morrison Milling Company*, 38 F.3d 776, 781 (5th Cir. 1994).  The breadth of ERISA § 514 is clear based upon the plain reading of the statute, ". . . the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . .. "  ERISA  § 514, 29 U.S.C. § 1144(a) (emphasis added).  Congress' goal in drafting ERISA was to provide an exclusive federal enclave for the regulation of benefit plans.  *See Memorial Hospital System v. Northbrook Life Insurance Company, et al.*, 904 F.2d 236, 244 (5th Cir. 1990).  Preempted state laws include general state laws that in and of themselves have no impact on employee benefit plans.  *Lee, et al. vs. E.I. DuPont de Nemours and Company*, 894 F.2d 755, 756 (5th Cir. 1990).

In *Lee*, the plaintiffs alleged state law fraud and negligent misrepresentation claims seeking retirement benefits.  The Circuit Court found that the state law causes of action were related to employee benefit plans, and were preempted based on ERISA § 514, 29 U.S.C. § 1144(a).  Similarly, in *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir. 1989), an employee sought to recover benefits pursuant to a state breach of contract claim.  The Circuit Court found that the breach of contract claim was preempted by ERISA § 514, 29 U.S.C. § 1144(a). The same

principle governs here.  Although United's state-law causes of action arise under general state laws, because the suit seeks to invoke state law in order to recover for alleged acts related to ERISA benefit plans, the claims for money paid pursuant to such plans must be dismissed as a matter of law.

In determining if conflict preemption applies, courts consider "whether the state law claims are 'bound up with interpretation and administration of the ERISA plan.'" *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 561 (W.D. La. 2012). Here, the causes of action are inextricable from the administration of the plans and therefore United's state law causes of action should be dismissed.  In regards to United's fraud or negligent misrepresentation claims – where a fraud or negligent misrepresentation claim is based on payments owed or made under a plan, the claim is preempted. *See Transitional Hosps. Corp. v. Blue Cross & Blue Shield*, 164 F.3d 952, 954 (5th Cir. 1999) (preempting state law claims by a hospital seeking recovery of benefits owed under a plan to a plan participant). Moreover, the distinction regarding whether services are in-network or out-of-network, and whether such in/out-of-network services are covered for United members is governed by the particular plans. *See generally*, *North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 193-94 (5th Cir. 2015). In its Complaint, United alleges that the plans were incorrectly administered and reimbursed because of Defendants' misrepresentations and fraudulent nondisclosures. Complaint at ¶¶ 127, 184. This connection with ERISA plans necessitates a finding of ERISA preemption. *See Transitional, supra*, 164 F.3d at 954; *Smith v. Texas Children's Hosp*., 84 F.3d 152, 154-155 (5th Cir. Tex. May 15, 1996); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 (1983). In regards to United's Claims under the Texas Theft Liability Act, the Fifth Circuit has found that such claims can be conflict preempted before, in the case, *St. Michael's Emergency Ctr., LLC v.*

*Aetna Health Mgmt., LLC*, 2011 U.S. Dist. LEXIS 155623, *68-69 (S.D. Tex. Aug. 22, 2011). In *St. Michael's*, the plaintiffs argued that the defendants unlawfully obtained services by failing to pay for treatments provided pursuant to the terms of ERISA plans. *Id*. Because the claims were based on a failure to pay as required under the plans, they were governed by ERISA and therefore preempted. *Id.* United cannot escape preemption since its claims are based on the ERISA plans, and thus the same rationale applies here. *See* Weiner *v. Tex. Health Choice, L.C.*, 2002 U.S. Dist. LEXIS 2654, *11 (N.D. Tex. Feb. 15, 2002) (no preemption where claims are not based on the ERISA plans).

United's claims under the Texas Theft Liability Act are subject to ERISA preemption because they are based on benefits provided pursuant to the ERISA plans of United members. United's Texas Theft Liability Act claim is based on: "words in the claims submitted to United, false impressions of facts that IAM, Sun, Mission, Dr. Murphy, and Saucedo did not believe to be true;" and "the false impression of fact that [Sun and Mission] were part of United's provider network . . . ." Complaint at ¶¶ 161-62. Each purported instance of conduct amounting to appropriation relates to billing for claims, providing services per the ERISA plans, and the coverage of services as in-network or out-of-network, pursuant to the terms of the plans. This Circuit maintains that preemption applies even if the conduct alleged in the Complaint was in some instances only indirectly centered on the ERISA plans. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. Tex. Nov. 14, 1994) (citations omitted). Here, the unlawfully appropriated property is money paid to Defendants that was only "unlawfully appropriated" by United exercising its discretion as an ERISA fiduciary and administering benefits pursuant to the plans. Complaint at ¶ 161 (discussing United's judgment as to whether benefits should be paid). This nexus is sufficient for ERSIA conflict preemption

to apply under Fifth Circuit law, and therefore the alleged violations of the Texas Theft Liability Act must be dismissed. Finally, United's claim for Money Had and Received is subject to conflict preemption because it too is based on funds provided under the terms of ERISA plans. Thus, for the foregoing reasons, United's state-law claims are subject to ERISA conflict preemption and therefore must be dismissed.

### III.    Fraud and Fraudulent Nondisclosure and Negligent Misrepresentation are Insufficiently Pled and Improperly Rely on Group Pleading.

United's Complaint fails to meet the heightened standard of pleading fraud and therefore must be dismissed. Federal Rule of Civil Procedure 9(b) "requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud . . . . The Fifth Circuit interprets Rule 9(b) strictly, requiring specific allegations as to each element of fraud." *BC's Heating & Air and Sheet Metal Works v. Vermeer Mfg. Co.*, 2012 WL 1067100 at *2 (S.D. Miss. 2012) (internal citations and quotation marks omitted); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010). This requires that the party alleging fraud "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (internal citations and quotation marks omitted). "Under Texas law, fraud occurs when: (1) a party makes a material representation; (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) the misrepresentation is made with the intention that it should be acted on by the other party; and (4) the other party relies on the misrepresentation and thereby suffers injury." *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir.1993); *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). *Conn. Gen. Life.*

*Ins. Co. v. Humble Surgical Hosp., LLC*, 2016 U.S. Dist. LEXIS 71127, *46-47 (S.D. Tex. June 1, 2016).

Fraud-based causes of action should be dismissed where the Complaint groups the alleged fraudulent conduct of the Individual Defendants together, rather than proving examples of fraud with respect to each defendant. In the case *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, group pleading was rejected by the Fifth Circuit Court of Appeals with respect to the Private Securities Litigation Reform Act ("PSLRA").  The Court stated: "we do not construe allegations in the Complaint against the 'defendants' as a group properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004). The rejection of group pleading has been expanded past the PSLRA to apply to pleading any claim at common law. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 826 (S.D. Tex. 2007) ("The Fifth Circuit prohibits group pleading in claims under the PSLRA and common law.").[4]

United's pleadings are deficient with regards to the level of specificity when taking into account the Fifth Circuit's heightened pleading standard and United's use of group pleading. United references allegedly fraudulent conduct, but does not provide any indication as to when or where the conduct occurred. Instead, United's Complaint alleges vague, generalized allegations with little or no detail actually evidencing an alleged fraud. *See, e.g.*, Complaint at ¶ 119 ("The actions of [Defendants] provided substantial assistance in accomplishing the tortious result."); *see also*  Complaint at ¶ 121 ("[Defendants] each had

---

[4] Other courts echo the Fifth Circuit's rejection of group pleading. *E.g., Balko v. Carnegie Fin. Group Inc. (In re Balko)*, 348 B.R. 684, 694 (Bankr. W.D. Pa.) (stating "lumping multiple defendants in a group defeats the notice objective and is therefore improper under Fed. R. Civ. P. 9(b)").

knowledge that such conduct constituted a tort and gave IAM and each other assistance and/or encouragement, which was a substantial factor in causing the tort."). Moreover, the Court should not be swayed by United's attempts to avoid the appearance of group pleading where it lists each of the Individual Defendants by name. *See, e.g.*, *id*. at ¶ 120 ("Dr. Murphy, Saucedo, Lynn Murphy, Samantha Murphy, and Julie Pricer caused these entities to be used for the purpose of perpetrating an actual fraud upon United, which was committed primarily for the benefit of Dr. Murphy, Saucedo, Lynn Murphy, Samantha Murphy, and Julie Pricer."); *see also id.* at ¶¶ 119, 121. This is the equivalent of grouping these individuals together as the Individual Defendants and alleging group wrongdoings, which is improper and insufficient under Fifth Circuit law. *See Southland Sec. Corp.*, 365 F.3d at 365.

In the Fifth Circuit, the heightened pleading standard applies to negligent misrepresentation as well as fraud claims in cases where the plaintiffs do not "urge a separate focus" on the negligent misrepresentation claims – for instance, where both claims "are based on the same set of alleged facts." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *see also Lone Star Fund V (U.S.) LP v. Barclays Bank, PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010); *Center v. Total Body Contouring Incorporated*, 2017 WL 1093203 at *6 (N.D. Miss. 2017). "Under Texas law, a negligent misrepresentation occurs when: (1) a party makes a representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation supplies false information for the guidance of others in their business; and (3) the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information." *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Federal Land Bank Ass'n*

*v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991)); *Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp.*, LLC, 2016 U.S. Dist. LEXIS 71127, *49 (S.D. Tex. June 1, 2016).

Here, United's claim of negligent misrepresentation is based on the same set of alleged facts as its fraud claim and therefore fails for the same reasons that its fraud claim fails – it has not alleged any sufficiently specific facts to satisfy the particularity requirement of Rule 9(b). *See generally, Spragins v Sunburst Bank*, 605 So.2d 777, 780. As with United's fraud claim, notably missing in its negligent misrepresentation claim is the level of detail required by 9(b): the who, what, when, where, why, and how. *See Sullivan*, 600 F.3d at 551. Because United fails to meet this standard, negligent misrepresentation must be dismissed as a matter of law.

### IV. The Complaint Contains Insufficient Detail to Successfully Allege United's Claim for Fraudulent Transfers.

United's claims for fraudulent transfers must be dismissed as a matter of law because they are insufficiently pled and lack any factual particularity with respect to intent. A cause of action for fraudulent transfer must assert that there was actual or constructive fraudulent intent. *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. App. 2007). Section 24.005(b) of the Texas Business & Commerce Code Annotated sets out a list of facts and circumstances that can evidence fraudulent intent.[5] Here, United has only offered details showing that the Individual

---

[5] "In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." Tex. Bus. & Com. Code Ann. § 24.005(b).

Defendants ordered transfers of assets among the different Labs, CMH, and NMH. There is nothing illegal or even unexpected about individuals ordering that entities which do business with one another should transfer money. *See, e.g.* Complaint ¶ 167 (stating that "[a]t the direction of Dr. Murphy, Saucedo, Samantha Murphy, Lynn Murphy, and Pricer, NMH and CMH employees transferred assets to IAM, Sun, SAM, and Mission"). Indeed, United is essentially alleging the Individual Defendants have engaged in unlawful conduct by simply doing their jobs. While United states that the transfer of funds was made, "with the actual intent to hinder, delay, and defraud United," this is nothing more than a hollow recitation of the law with the names of Defendants filled in to the blanks. Complaint at ¶ 171. The Individual Defendants directed the transfer of funds because the funds were reimbursements for Laboratory Services that had been performed lawfully by the Labs; United offers no evidence that such transfers were done to defraud United (or any other party). This cause of action therefore does not contain enough factual matter to sufficiently plead a claim to survive a motion to dismiss. *See Cuvillier*, 503 F.3d at 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). United concludes by stating that Defendants knew or should have known that NMH and CMH would soon incur debts beyond their ability to pay, but cites no fact and provides no detail as to how the Individual Defendants should or could have known of NMH and CMH's financial solvency. Complaint at ¶ 172. United's claim for fraudulent transfers is so wholly lacking in specificity or any factual detail and therefore even accepting United's allegations as true, the claim fails and must be dismissed as to all the Individual Defendants pursuant to F.R.C.P. 12(b)(6).

**V.    United Insufficiently Pleads its Tortious Interference with Contract Claim.**

United's claims for tortious interference with contract must be dismissed as a matter of law because it is insufficiently pled. Under Texas state law there are four elements to

successfully prove a tortious interference with existing contracts: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc*., 29 S.W.3d 74, 77 (Tex. 2000); *see also Amigo Broad., LP v. Spanish Broad. Sys., Inc*., 521 F.3d 472, 489 (5th  Cir.  2008). The party alleging tortious interference has the burden of proving each element of the claim. *Dunn v. Calahan*, No. 03-05-00426-CV, 2008 Tex. App. LEXIS 9498, 2008 WL 5264886, at *3 (Tex. App.--Austin  Dec.  17,  2008,  pet.  denied) (mem.  op.)." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674-675 (S.D. Tex. Feb. 19, 2010). With respect to the second element requiring "a willful and intentional act of interference with the contract," the alleging party must present evidence of specific contract provisions that were breached. *Id.* at 675. "General claims of interference with a business relationship are insufficient to establish a tortious interference with contract claim." *Id*. The claim must make it clear that the interference was intentional. *Homoki v. Conversion Servs*., 717 F.3d 388, 396 (5th Cir. Tex. May 28, 2013). "Moreover, 'a plaintiff must show that the defendant took an active part in persuading a party to breach its contract . . . .[;] [m]erely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach.'" *Seeberger v. Bank of Am*., N.A., 2015 U.S. Dist. LEXIS 168348, *62 (W.D. Tex. Dec. 16, 2015) (quoting *Settlement Funding LLC v. RSL Funding, LLC*, 3 F. Supp. 3d 590, 607-08 (S.D. Tex. 2014)).

Despite the length of the Complaint and many Exhibits, United fails to allege with specificity that the Individual Defendants knowingly targeted contract provisions. This failure to provide detail is critical to United's claims. United's Complaint alleges that Sun, Mission,

SAM, and IAM, used CMH and NMH's billing credentials to disguise out-of-network lab services as though they were performed by CMH and NMH so that Sun, Mission, SAM, and IAM would be reimbursed pursuant to the contracts between United and the hospitals. Complaint at ¶ 149. It then goes on to allege that because the Individual Defendants knew about their roles in assisting the alleged intentional interference. *Id.* at ¶ 149. These allegations in no way equate to a showing that any Defendants, much less the Individual Defendants, knew the terms of the contract or intentionally interfered with such terms, as is required. *See Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d 598 at 675. Indeed, United admits that Sun, Mission, SAM, and IAM are strangers to the contracts between United and the hospitals, and does not allege how these Defendants or the Individual Defendants would have knowledge of specific contract terms. Complaint at ¶¶ 149-152.  At no point in its Complaint does United reference any specific agreements, the terms of specific agreements, or how the Individual Defendants would have knowledge of terms of these agreements. Instead, United's defective Complaint contains exactly the kind of generalized tortious interference claims that are insufficient under Texas case law, and therefore this cause of action should be dismissed. *See Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674- 675 (S.D. Tex. Feb. 19, 2010).

## VI.    United's Claim for Theft under the Texas Theft Liability Act Fails.

To establish a Texas Theft Liability Act claim, United must show that: (1) Defendants unlawfully acquired or otherwise exercised control over property belonging to United; (2) Defendants intended to withhold the property from United permanently or for an extended period of time; and (3) United was thereby damaged. *Harmon v. Harmon*, 962 F. Supp. 2d 873, 883 (S.D. Tex. 2013); *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Texas*, No. CIV.A. H-11-2086, 2012 WL 3028107, at *4 (S.D. Tex. July 24, 2012); *Meadows v. Hartford Life Ins.*

16

*Co.*, 429 F. Supp. 2d 853, 866 (S.D. Tex. 2006). United's Complaint only provides the vaguest of details regarding the "deception" used by the Individual Defendants to obtain money from United. *See, e.g,* Complaint at ¶ 71 ("[Samantha Murphy] offered various misleading explanations and generally tried to dissuade patients from contacting authorities . . . ."). United is surreptitiously revamping its previously alleged fraud claim as a violation of the Texas Theft Liability Act. Accordingly, United's claim for damages under the Texas Theft Liability Act must be dismissed for the same reason the fraud claims should be dismissed, that is, because they fail to allege sufficient details about when and where any fraudulent conduct occurred. The general, nonspecific nature of the allegations of supposed "deception" provides no particularity tying any specific statements made by any particular individuals on any given occasion. *See, e.g.*, Complaint at ¶ 160 ( "Dr. Murphy, Saucedo, IAM, Sun, and Mission unlawfully appropriated this property by inducing United to consent to transfer the property to NMH and CMH through deception."). Where the claim is lacking in such specificity, it must be dismissed. *Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC*, 2016 U.S. Dist. LEXIS 71127, *46-47 (S.D. Tex. June 1, 2016).

### VII.    Money Had and Received is Insufficiently Pled.

To establish a claim for money had and received, United must show that the Individual Defendants hold money that in equity and good conscience that money belongs to United. *Graman v. Graman*, No. 05-14-01254-CV, 2016 WL 235055, at *5 (Tex. App. Jan. 20, 2016). A claim for money had and received is not premised on wrongdoing, but rather looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 (Tex. 2015). Defendants provided Laboratory Services to patients at the request of medical

providers and billed only for those services. United has not alleged any facts to support its assertion that, in fairness, the money for those services belongs to United.

Moreover, United's claim for money had and received states that it paid money to NMH and CMH for services rendered, but that "Defendants took the money. . . ." Complaint at ¶ 180. In regards to the Individual Defendants, United's cause of action for Money Had and Received makes no allegation that the Individual Defendants retained any of the funds paid to the Labs. Complaint at ¶¶ 175-80. Generally alleging that monies paid to the Labs are in the hands of Defendants, which is not even specific to the Individual Defendants, does not sufficiently plead this cause of action. *See, e.g.*, Complaint ¶181 (stating the bare assertion that "[t]he money United paid to NMH and CMH, which is now possessed by Defendants, belongs in good conscious to United"). This failure, coupled with United's failure to provide any facts supporting the notion that fairness would have the money returned to United, demonstrate that this claim fails and must be dismissed pursuant to F.R.C.P. 12(b)(6).

## VIII.    United's Claims Against the Individual Defendants Should be Dismissed Because United Cannot Pierce the Corporate Veil.

The causes of action against the Individual Defendants should be dismissed because of United's failure to pierce the corporate veil. "Piercing the corporate veil is possible when the corporate form has been used as an alter ego of another person or corporation or if it has been used to perpetrate a fraud, evade an existing obligation, create a monopoly, circumvent a statute, protect a crime, or justify wrong." *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 23 (Tex. App. 2012) (citation omitted) (citing *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008). Piercing the corporate veil requirements apply equally to limited liability companies as they do corporations. *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013). Piercing the corporate veil should not be allowed unless the separateness between the

entity and the individual ceases to exist or adhering to the idea that the entity and the individual are separate would sanction a fraud or promote injustice. *Zisblatt v. Zisblatt*, 693 S.W.2d 944, 950 (Tex. App. 1985), *dismissed* (Feb. 19, 1986) (citation omitted); *see Wilson v. Davis*, 305 S.W.3d 57, 69 (Tex. App. 2009) ("[T]he corporate fiction generally will not be disregarded absent exceptional circumstances."). Moreover, a party must specifically plead its theory for piercing the corporate veil. *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W. 3d at 22 (citing *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991); *Seidler v. Morgan,* 277 S.W.3d 549 (Tex. App.-Texarkana 2009, pet. denied); *Town Hall Estates–Whitney, Inc. v. Winters,* 220 S.W.3d 71, 86 (Tex. App.-Waco 2007, no pet.)).

Here, no exceptional circumstances exist to disregard the corporate form of the entities, and therefore the causes of action should be dismissed as to the Individual Defendants. United's Complaint fails as to the Individual Defendants because it fails to show that the individuals were so intertwined with the entities as to warrant piercing the corporate veil. Nowhere does the Complaint allege that the role of the Individual Defendants is such that the entities they work for cease to exist. Indeed, even where United anticipates the corporate fail argument, it fails to allege any specific facts as to how the entities and Individual Defendants are one in the same. Complaint at ¶ 120. Moreover, allowing the claims to be dismissed as to the Individual Defendants would not sanction the alleged fraud or promote injustice; if the Court somehow finds that fraud is sufficiently pled to survive the instant Motion, the entities could continue as Defendants in this suit.  Where United does not allege a sufficient closeness between the Individual Defendants and the entities, it does not raise the exceptional circumstances for piercing the corporate veil, and therefore the Individual Defendants are protected by the

corporate structures of the entities and all causes of action against the Individual Defendants should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Individual Defendants respectfully ask that this Court dismiss United's Complaint in its entirety.

Respectfully submitted,

**HORNBERGER FULLER & GARZA
INCORPORATED**
7373 Broadway, Suite 300
San Antonio, Texas 78209

By: /s/ David W. Navarro_____
     David W. Navarro
     State Bar No. 24027683
     dnavarro@hfgtx.com
     David Jed Williams
     State Bar No. 21518060
     jwilliams@hfgtx.com
     Cassie Garza Matheson
     State Bar No. 24074258
     cmatheson@hfgtx.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 18, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not allowed to receive electronically Notices of Electronic Filing.

_____/s/ David W. Navarro_____
David W. Navarro

Andrew G. Jubinsky
Raymond E. Walker
FIGARI & DAVENPORT, LLP
901 Main Street,
Suite 3400
Dallas, Texas 75202
Telephone (214) 939-2000
Facsimile (214) 939-2090

Stephen W. Mooney
WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC
3344 Peachtree Road, NE
Suite 2400
Atlanta, Georgia 30326
Telephone (404) 876-2700
Facsimile (404) 875-9433

ATTORNEYS FOR PLAINTIFFS