IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MISSION TOXICOLOGY, LLC., and SUN CLINICAL LABORATORY, LLC, <br><br>     *Plaintiffs*, <br><br> v. <br><br> UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE OF TEXAS, INC., UNITEDHEALTHCARE OF FLORIDA, INC., and UNITEDHEALTHCARE SERVICES, INC., <br><br>     *Defendants*. | No. 5:17-CV-01016- DAE (lead case) |
| UNITEDHEALTHCARE INSURANCE COMPANY, INC., and UNITEDHEALTHCARE SERVICES, INC., <br><br>     *Plaintiffs*, <br><br> v. <br><br> MICHAEL MURPHY, M.D., JESSE SAUCEDO, JR., SAMANTHA MURPHY, LYNN MURPHY, JULIE PRICER, MISSION TOXICOLOGY LLC, SUN CLINICAL LABORATORY, LLC, SUN ANCILLARY MANAGEMENT, LLC, INTEGRITY ANCILLARY MANAGEMENT, LLC, ALTERNATE HEALTH LAB, INC., and LMK MANAGEMENT, LLC, <br><br>     *Defendants*. | No. 5:18-CV-00347 (consolidated case) |

**UNITED'S OPPOSITION TO INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS UNITED'S COMPLAINT**

i

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL ALLEGATIONS ............................................................................................. 2

III. ARGUMENT & AUTHORITIES ..................................................................................... 3

    A.    United's causes of action are not preempted by ERISA ............................................. 4

        1.    ERISA § 514(a) only preempts state law claims that "relate to" ERISA plans. .. 4

            i.    United's causes of action do not address an area of exclusive federal
concern. ............................................................................................................ 6

            ii.    United's causes of action do not directly affect relationships between
traditional ERISA entities. ............................................................................. 8

    B.    United sufficiently pled its causes of action. ............................................................. 9

        1.    United states a claim for fraud, fraudulent nondisclosure, and negligent
misrepresentation ................................................................................................... 9

        2.    United states a claim for fraudulent transfer. ...................................................... 12

        3.    United states a claim for tortious interference with contract ............................... 14

        4.    United states a claim for theft under the Texas Theft Liability Act. ................... 16

        5.    United states a claim for money had and received. ............................................. 17

    C.    United does not need to pierce the corporate veil to bring claims against the
Individual Defendants ............................................................................................... 18

IV. CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*,
  662 F.3d 376, 382 (5th Cir. 2011) .................................................................... 5, 6, 9

*ACS Investors, Inc. v. McLaughlin*,
  943 S.W.2d 426 (Tex. 1997) ...................................................................................... 14

*Aetna Health Inc. v. Health Goals Chiropractic Ctr., Inc.*,
  No. 10-cv-5216, 2011 WL 1343047 (D.N.J. April 7, 2011) .................................. 7

*Aetna Health Inc. v. Srinivasan*,
  No. 10-cv-4858, 2010 WL 5392697 (D.N.J. Dec. 22, 2010) ................................ 7

*Aetna Life Ins. Co. v. Humble Surgical Hosp., LLC*,
  No. 12-cv-1206, 2016 WL 7496743, at *3 (S.D. Tex. Dec. 31, 2016) .................. 4, 6

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*,
  No. 14-cv-03053, 2015 WL 12778048 (C.D. Cal. Oct. 23, 2015) ........................ 7

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.*,
  521 F.3d 472 (5th Cir. 2008) ................................................................................... 14

*Arapahoe Surgery Ctr. v. Cigna Healthcare, Inc.*,
  No. 13-cv-3422, 2015 WL 1041515 (D. Colo. March 6, 2015) ............................ 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 13

*Bank of La. v. Aetna U.S. Healthcare Inc.*,
  468 F.3d 237 (5th Cir. 2006) ................................................................................... 6, 8

*Blue Cross & Blue Shield of Miss. v. Sharkey-Issaquena Cmty. Hosp.*,
  No. 3:17-cv-338, 2017 WL 6375954, at *1-5 (S.D. Miss. Dec. 13, 2017) ........... 2, 4

*Cass v. Stephens*,
  156 S.W.3d 38 (Tex. App.—El Paso 2004) ........................................................... 18

*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*,
  525 S.W.3d 671 (Tex. 2017) .................................................................................... 15

*Conn. Gen. Life Ins. Co. v. Advanced Chiropractic Healthcare*,
  54 F. Supp. 3d 260 (E.D. N.Y. 2014) ..................................................................... 7

*Conn. Gen. Life Ins. Co. v. Advanced Surgery Cntr. of Bethesda, LLC*,
  No. 14-cv-02376, 2015 WL 4394408 (D. Md. July 15, 2015) .............................. 7

*D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125 (1992)...................................................... 5

*Dist. Council 16 N. Cal. Health & Welfare Trust Fund v. Sutter Health*,
No. 15-cv-00735, 2015 WL 2398543 (N.D. Cal. May 19, 2015)............................................. 7

*E.I. DuPont de Nemours & Co. v. Sawyer*,
517 F.3d 785 (5th Cir. 2008) ............................................................................................... 5, 6

*Fustok v. UnitedHealth Group, Inc.*, No. 12-cv-787, 2013 WL 2189874, at *6 (S.D. Tex. May
20, 2013) ............................................................................................................................. 4, 6

*Geller v. Cty. Line Auto Sales, Inc.*,
86 F.3d 18 (2d Cir. 1996) ........................................................................................................ 7

*Kaye v. Lone Star Fund v. (U.S.), L.P.*,
453 B.R. 645 (N.D. Tex. 2011) ............................................................................................. 14

*Kingston v. Helm*,
82 S.W.3d 755 (Tex. App.—Corpus Christi 2002, pet. denied)............................................. 19

*Leyendecker & Assocs., Inc. v. Wechter*,
683 S.W.2d 369 (Tex. 1984).................................................................................................. 18

*Lone Star Fund v. Barclays Bank*,
594 F.3d 383, 387, n. 3 (5th Cir. 2010) ................................................................................. 10

*Mass. Mut. Life Ins. Co. v. Marinari*,
No. 07-cv-2473, 2009 WL 5171862 (D.N.J. Dec. 29, 2009) ................................................... 7

*Mayeaux v. La. Health Serv. & Indem. Co.*,
376 F.3d 420 (5th Cir. 2004) ............................................................................................... 5, 6

*Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*,
904 F.2d 236 (5th Cir. 1990) ........................................................................................... 6, 8, 9

*Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Texas*,
No. CIV.A. H-11-2086, 2012 WL 3028107 (S.D. Tex. July 24, 2012) ................................... 17

*Miller v. Keyser*,
90 S.W.3d 712 (Tex. 2002)............................................................................................... 18, 19

*Mims v. Stewart Title Guar. Co.*,
521 F. Supp. 2d 568, 574 (N.D. Tex. 2007) .......................................................................... 17

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995)................................................................................................................. 5

*Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*,
No. 13-cv-02378, 2014 WL 1028351 (E.D. Cal. Mar. 14, 2014)............................................. 7

iv

*O'Hare v. Graham*,
    455 F. App'x 377 (5th Cir. 2011) ............................................................. 18, 19

*Permian Petroleum Co. v. Barrow*,
    484 S.W.2d 631 (Tex. App.—El Paso 1972, reh'g denied) ............................. 18, 19

*Rimkus Consulting Grp., Inc. v. Cammarata*,
    688 F. Supp. 2d 598 (S.D. Tex. 2010) ......................................................... 16

*Sanchez v. Mulvaney*,
    274 S.W.3d 708 (Tex. App.—San Antonio 2008, no pet.) .................................. 19

*Simmonds Equip., LLC v. GGR Int'l, Inc.*,
    126 F. Supp. 3d 855 (S.D. Tex. 2015) ......................................................... 16

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353, 363 (5th Cir. 2004) ............................................................. 10

*Trustees of the Nw. Laundry and Dry Cleaners Health & Welfare Trust Fund v. Burzynski*,
    27 F.3d 153 (5th Cir. 1994) ...................................................................... 7

*Tuchman v. DSC Comms. Corp.*,
    14 F.3d 1061 (5th Cir. 1994) .................................................................... 13

*U.S. Bank Nat'l Ass'n v. Verizon Comms. Inc.*,
    817 F. Supp. 2d 934 (N.D. Tex. 2011) ......................................................... 13

*U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*,
    966 F. Supp. 2d 690 (W.D. Tex. 2013) ......................................................... 15

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180, 190 (5th Cir. 2009) ............................................................. 11

*U.S. ex rel. Johnson v. Shell Oil Co.*,
    183 F.R.D. 204, 206 (E.D. Tex. 1998) ......................................................... 11

*Walker v. Anderson*,
    232 S.W.3d 899 (Tex. App. 2007) ............................................................. 13

*Willard v. Humana Health Plan of Tex. Inc.*,
    336 F.3d 375, 384 (5th Cir. 2003) ............................................................. 11

*Wohlstein v. Aliezer*,
    321 S.W.3d 765 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ........................ 13

## **Statutes**

29 U.S.C. § 1001 ....................................................................................... 5

29 U.S.C. § 1144.................................................................................................................. 4

Tex. Bus. & Com. Code § 24.005...................................................................................... 13

Tex. Penal Code § 31.01.................................................................................................... 16

Texas Penal Code § 31.03.................................................................................................. 16

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................... 11, 13

Plaintiffs UnitedHealthcare Insurance Company, Inc. and UnitedHealthcare Services, Inc. ("United"), by and through their undersigned counsel, file this opposition to the Individual Defendants' Motion to Dismiss Plaintiffs' Complaint ("Motion").

## I.  INTRODUCTION[1]

Defendants defrauded United out of $44 million by using two rural hospitals to launder claims for lab services.  Defendants submitted claims to United using the hospitals' provider identifications and then ordered the hospitals to transfer them the overwhelming majority – as much as 95% – of the funds.  United's Complaint focuses on Defendants' fraudulent conduct that targeted United and intended to induce United to make payment for claims that it would not have otherwise paid.   The Complaint asserts six causes of action: (1) fraud and fraudulent nondisclosure; (2) tortious interference with contract; (3) violations of the Texas Theft Liability Act; (4) fraudulent transfers; (5) money had and received; and (6) negligent misrepresentation.

This is Defendants' second round of motion to dismiss briefing. After this case was consolidated, the Court permitted Defendants leave to refile their motion to dismiss. Instead of refiling the same motion, Defendants split the briefing into two: filing a brief on behalf of the "Lab Defendants" and a brief on behalf of the "Individual Defendants." Both motions essentially assert the same faulty arguments.

The Individual Defendants first argue that because some of the funds that they are alleged to have defrauded came from ERISA plans, United's causes of action are "conflict" preempted by ERISA § 514(a).  Yet, this argument subverts the primary purpose of ERISA (protecting ERISA plans and beneficiaries), which is the hallmark of the test for conflict preemption.

---

[1] All emphases supplied by counsel unless otherwise noted.

Indeed, courts around the country have uniformly rejected the Individual Defendants' superficial preemption argument, including a court in this Circuit that rejected the same argument made by several of the same Defendants.[2] ERISA was never intended to protect third parties who defraud ERISA plans.

The Individual Defendants' second argument is that United's causes of action fail to state a claim under Rules 9(b) and 12(b)(6). This argument plainly ignores the well-plead factual allegations in United's Complaint.

The Individual Defendants' third and final argument is that they cannot be liable because United has not pierced the corporate veil. This argument fails to address the longstanding rule in Texas that allows for personal liability where individuals knowingly participate in fraud. The Individual Defendants' Motion should be denied.

## II.  FACTUAL ALLEGATIONS

United alleges that Defendants engineered and executed a fraudulent scheme against United, which caused United to pay approximately $44 million for fraudulent lab services claims. [*See* ECF No. 1.][3] Defendants Michael Murphy, M.D., Jesse Saucedo, Jr., Samantha Murphy, Lynn Murphy, and Julie Pricer (collectively "Individual Defendants") operated this scheme through, among other entities, Defendants Mission Toxicology ("Mission"), Sun Clinical Laboratory ("Sun"), Sun Ancillary Management ("SAM"), Integrity Ancillary Management ("IAM"), Alternate Health Lab, Inc. ("AHL"), and LMK Management ("LMK") (collectively "Entity Defendants" or "Lab Defendants"). [*See id.*]

---

[2] *Blue Cross & Blue Shield of Miss. v. Sharkey-Issaquena Cmty. Hosp.*, No. 3:17-cv-338, 2017 WL 6375954, at *1-5 (S.D. Miss. Dec. 13, 2017).
[3] ECF No. 1 refers to United's Complaint in the consolidated case, Case No. 5:18-CV-00347. The other docket citations reference filings in the lead case, Case No. 5:17-CV-01016.

Defendants' scheme depended on the submission of claims that falsely represented that lab services were referred to and performed by Newman Memorial Hospital ("NMH") and Community Memorial Hospital ("CMH"), and resulted in payments to those hospitals that Defendants transferred to their own accounts.  [*Id.* ¶ 31.]  Defendants induced lab testing referrals from physicians by offering kickbacks and/or falsely representing to referral sources that Sun and Mission's lab services are "in-network" with United.  [*Id.* ¶ 36.]  Defendants used AHL to perform the laboratory tests, but then IAM billed United as though the rural hospitals performed the services.  [*Id.* ¶ 64.]  By billing as though the services were performed by the rural hospitals, Defendants circumvented fraud prevention measures, received the financial benefits of being in-network providers (although they were not), and avoided patient complaints about questionable services and inflated charges.  [*Id.* ¶ 65.]  To disguise the scheme, Defendants forged lab reports to make it appear that the rural hospitals performed the lab services even though they were performed by AHL.  [*Id.* ¶ 68.]  After United paid the rural hospitals, Defendants instructed hospital employees to wire those funds to Sun, Mission, IAM, and their affiliates.  [*Id.* ¶ 74.]

United's Complaint provides numerous representative examples of the fraudulent submissions Defendants made under the rural hospitals' billing credentials, as well as many examples of fraudulent transfers made at Defendants' direction.  [*Id.* ¶¶ 84-95; 106-117.]

## III.  ARGUMENT & AUTHORITIES

The Individual Defendants argue that: (A) ERISA preempts United's causes of action, (B) United's causes of action lack sufficient particularity and fail to state a claim, and (C) the

Individual Defendants cannot be liable without piercing of the corporate veil.  All of these arguments fail—the Motion should be denied in its entirety.[4]

**A.    United's causes of action are not preempted by ERISA.**

The Individual Defendants argue that United's causes of action are "conflict" preempted by ERISA 29 U.S.C. § 1144. [ECF No. 60, pp. 5-10.]  However, the Individual Defendants' argument has been repeatedly rejected by courts in this Circuit and around the country. In short, the fact that ERISA plans happen to be among the victims of Defendants' fraudulent scheme does not mean that preemption shields Defendants from liability under Texas law. *See Aetna Life Ins. Co. v. Humble Surgical Hosp., LLC*, No. 12-cv-1206, 2016 WL 7496743, at *3 (S.D. Tex. Dec. 31, 2016) (holding Aetna's fraud claims against a provider for monies that "[the provider] tricked [Aetna] into paying" were not preempted, as ERISA "plans are merely the context of [the provider's] fraud"); *Blue Cross & Blue Shield of Miss.*, 2017 WL 6375954, at *1-5; *Fustok v. UnitedHealth Grp., Inc.,* No. 12-cv-787, 2013 WL 2189874, at *6 (S.D. Tex. May 20, 2013) (holding United's state law causes of action premised on a provider executing a fraudulent billing scheme were not preempted by ERISA).

**1.    ERISA § 514(a) only preempts state law claims that "relate to" ERISA plans.**

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). While observing that ERISA's conflict preemption language is "clearly expansive," the Supreme Court has specifically stated that "[p]re-emption does not occur if the state law has only a tenuous, remote, or peripheral

---

[4] United submits that the law pertaining to this Motion is clear and that oral argument is unnecessary.  United, however, will be prepared to provide oral argument should the Court find it useful to its decision.

connection with covered plans, as is the case with many laws of general applicability." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995) ("*Travelers*") (quoting *D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130. n.1 (1992)).

Attempting to define the scope of what "relates to" employee benefit plans, the Supreme Court has "declined to apply an 'uncritical literalism' to the phrase, and observed that '[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and **look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive**.'" *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011) ("*Access*"), aff'd on reh'g, 698 F.3d 229 (5th Cir. 2012) (en banc), cert. denied, — U.S. —, 133 S.Ct. 1467 (2013) (quoting *Travelers*, 514 U.S. at 656). ERISA's "objectives include establishing uniform national safeguards 'with respect to the establishment, operation, and administration of [employee benefit] plans,' and 'establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans.'" *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004) (quoting 29 U.S.C. § 1001(a), (b) (2000)). "The basic thrust of [§ 1144(a)], then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Travelers*, 514 U.S. at 657.

Based on these objectives, the Fifth Circuit has adopted "a two-part test when a defendant argues that a claim is preempted by ERISA." *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 799-800 (5th Cir. 2008). To successfully assert ERISA preemption, a defendant must prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and

beneficiaries." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (quoting *Mayeaux*, 376 F.3d at 432). The party asserting ERISA preemption bears the burden of proof on both elements. *Id*.

> ### i.    United's causes of action do not address an area of exclusive federal concern.

To determine whether a state law tort claim "addresses" an area of exclusive federal concern,[5] courts look at the conduct alleged to be tortious and assess whether *that conduct* is an activity that is regulated by ERISA's statutory framework. *See Access*, 662 F.3d at 385-86. By looking to the conduct at issue, courts protect ERISA's statutory objectives, while preventing ERISA § 514(a) from "encompass[ing] virtually all state law." *Id.* at 382.[6]

United's causes of action do not address an area of exclusive federal concern because the conduct that is alleged to be tortious – Defendants' intentional submission of false, misleading, or incomplete information – is not an area Congress intended to regulate when it enacted ERISA. *Blue Cross*, 2017 WL 6375954, at *4; *Fustok*, 2013 WL 2189874, at *6; *Aetna Life Ins. Co.*,

---

[5] For purposes of ERISA § 514(a), "areas of exclusive federal concern" are those that Congress sought to exclusively control and regulate by enacting ERISA, which include the management and administration of ERISA plans. *See Mayeaux*, 376 F.3d at 432; *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245, n.12 (5th Cir. 1990).

[6] *Compare Mayeaux*, 376 F.3d at 432-33 (preempting claims for negligence and unfair trade practices because the conduct at issue was the ERISA plan administrator's "handling, review, and disposition of a request for coverage[,]" which are activities exclusively regulated by ERISA's statutory framework) *with Access*, 662 F.3d at 386 (state law negligent misrepresentation claim was not preempted because the conduct at issue – an ERISA plan administrator's alleged misrepresentations to providers – was not "a domain of behavior that Congress intended to regulate with the passage of ERISA.") *and Sawyer*, 517 F.3d at 799-800 (state law claims based on an employer's misrepresentations were not preempted, even though the claims specifically sought ERISA benefits as damages, because plaintiffs did not need to "prove that any aspect of [the ERISA plan's administration] was improper" to prevail on their claims and, as such, the claims did "not intrude into federal matters respecting the duties and standards of conduct for an ERISA plan administrator.").

---

2016 WL 7496743, at *3; *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 14-cv-03053, 2015 WL 12778048, at *24-31 (C.D. Cal. Oct. 23, 2015) (rejecting preemption against very similar state law claims, "the Court continues to rely on the purpose behind § 514 and the nature of the conduct at issue in this case.").[7]

Nevertheless, the Individual Defendants attempt to frame United's causes of action as relating to the administration of benefits [ECF No. 60, p. 6] and disingenuously assert that "United is alleging that the plans were incorrectly administered[.]" [*Id.*, p. 8.] United's causes of action do not challenge whether benefits were administered correctly, but rather whether Defendants supplied United with truthful and/or complete information in a manner consistent

---

[7] *See also Trs. of the Nw. Laundry and Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994) (affirming judgment against provider who committed fraud, under Texas law, by submitting claims for reimbursement and failing to disclose material information); *Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996) (fraud claims brought by plan not preempted because "[t]he [ERISA] plan was only the context in which this garden variety fraud occurred."); *Trs. Of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 779 (7th Cir. 2002) (holding ERISA preemption did not apply and that a person's "decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law"); *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. 14-cv-02376, 2015 WL 4394408, at *17 (D. Md. July 15, 2015) (insurer's fraud and negligent misrepresentation claims not preempted because "the core allegations of misconduct . . . relate to the [provider-defendants'] fraudulent or negligent misrepresentations"); *Dist. Council 16 N. Cal. Health & Welfare Trust Fund v. Sutter Health*, No. 15-cv-00735, 2015 WL 2398543, at *1-6 (N.D. Cal. May 19, 2015) (ERISA did not preempt plan's unfair competition claim); *Arapahoe Surgery Ctr. v. Cigna Healthcare, Inc.*, No. 13-cv-3422, 2015 WL 1041515, at *6–7 (D. Colo. March 6, 2015) (ERISA did not preempt insurer's state law claims against surgery center); *Conn. Gen. Life Ins. Co. v. Advanced Chiropractic Healthcare*, 54 F. Supp. 3d 260, 264-68 (E.D. N.Y. 2014) (ERISA did not preempt insurer's claims for fraud, unjust enrichment, and money had and received); *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, No. 13-cv-02378, 2014 WL 1028351, at *5-8 (E.D. Cal. March 14, 2014) (ERISA did not preempt insurer's state statutory and common law claims); *Aetna Health Inc. v. Health Goals Chiropractic Ctr., Inc.*, No. 10-cv-5216, 2011 WL 1343047, at *3–6 (D.N.J. April 7, 2011) (ERISA did not preempt insurer's common law claims); *Aetna Health Inc. v. Srinivasan*, No. 10-cv-4858, 2010 WL 5392697, at *3 (D.N.J. Dec. 22, 2010); *Mass. Mut. Life Ins. Co. v. Marinari*, No. 07-cv-2473, 2009 WL 5171862, at *6-9 (D.N.J. Dec. 29, 2009) (ERISA did not preempt insurer's claim under state fraud statute).

with Defendants' independent obligations under Texas law. *See Mem'l*, 904 F.2d at 250; *Access*, 662 F.3d at 385-86; *Bank of La.*, 468 F.3d at 243; *Aetna Life Ins. Co.*, 2016 WL 7496743, at *3; *Blue Cross*, 2017 WL 6375954, at *4. Non-ERISA entities' conduct, *e.g.,* Defendants' misrepresentations, is not an area of exclusive federal concern, and using ERISA conflict preemption to bar United's claims against them does nothing to advance ERISA's goals. *See Mem'l*, 904 F.2d at 249-50. Indeed, it is axiomatic that Congress did not enact ERISA § 514(a) to supplant state law governing the accuracy with which non-ERISA entities provide information about their services to others. *Id.; see also Lewis*, 343 F.3d at 544.

### ii.    United's causes of action do not directly affect relationships between traditional ERISA entities.

The traditional ERISA entities are the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Mem'l*, 904 F.2d at 245. Medical providers, billing companies, management companies, and their executives are not traditional ERISA entities, and no part of ERISA regulates the relationship between medical providers and plan fiduciaries or administrators. *See Mem'l*, 904 F.2d at 249; *Access*, 662 F.3d at 385-86; *Blue Cross*, 2017 WL 6375954, at *5.

When determining whether claims "directly address the relationship between traditional ERISA entities," "the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." *Bank of La.*, 468 F.3d at 243. Applying Texas law to Defendants' conduct in this case will not affect the relationship between traditional ERISA entities. *See id.*; *Access*, 662 F.3d at 385-86.

Defendants are not traditional ERISA entities. *See Mem'l*, 904 F.2d at 249. Nor is United a traditional ERISA entity with respect to the claims it asserts in this case. A party may qualify

as a fiduciary under ERISA for some purposes but not others. *Blue Cross*, 2017 WL 6375954, at *5. However, in seeking to recover damages for its losses due to "fraudulently submitted" claims, United is not acting as a plan fiduciary. *Id*. Accordingly, United's claims in this case do not implicate the relationship among traditional ERISA entities.

Ultimately, United's Complaint "concern[s] the relationship between the plan and third-party, non-ERISA entities," and the veracity of information supplied in the course of that relationship "is not a domain of behavior that Congress intended to regulate with the passage of ERISA." *Access*, 662 F.3d at 386 (citing *Mem'l*, 904 F.2d at 247). The Court should reject the Individual Defendants' ERISA preemption argument.

**B.    United sufficiently pled its causes of action.**

The Individual Defendants argue that United failed to state a claim for (1) fraud, fraudulent nondisclosure, and negligent misrepresentation, (2) fraudulent transfer, (3) tortious interference with contract, (4) theft under the Texas Theft Liability Act, and (5) money had and received.   [ECF No. 60, pp. 10-18.]   As explained below, United more than satisfied the applicable pleading requirements for each cause of action.

**1.    United states a claim for fraud, fraudulent nondisclosure, and negligent misrepresentation.**

The Individual Defendants argue that "United's pleadings are deficient with regards to the level of specificity when taking into account the Fifth Circuit's heightened pleading standard and United's use of group pleading."   [ECF No. 60, p. 11.]   This conclusory argument ignores the dozens of paragraphs of specific facts and thousands of specifically identified fraudulent claims alleged in United's Complaint.

The Individual Defendants' "group pleading" doctrine is based on a misinterpretation and misapplication of the doctrine. This doctrine, which originates out of the securities fraud context,

allows plaintiffs, when pleading a claim of fraud, "to rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company." *Southland Sec. Corp. v. INSpire Ins. Sols.*, Inc., 365 F.3d 353, 363 (5th Cir. 2004) (internal quotation marks omitted). "Under this doctrine, the plaintiff need not allege any facts demonstrating an individual defendant's participation in the particular communication containing the misstatement or omission where the defendants are 'insiders or affiliates' of the company." *Id.* Courts that permit the use of the group pleading doctrine "allow[ ] unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles." *Id.*

United's Complaint does not rely on or attempt to rely on the group pleading doctrine. Nowhere in the Complaint does United assert that one of the Individual Defendants is liable for fraud purely because of his or her position. In reality, the Individual Defendants' group pleading argument amounts to nothing more than an assertion that United did not plead sufficient detail as to the fraudulent acts undertaken by the Individual Defendants. But, as explained below, such an assertion is not accurate.

United's Complaint pleads fraud, fraudulent nondisclosure, and negligent misrepresentation as to the Individual Defendants with the requisite specificity. Fraud, fraudulent nondisclosure, and negligent misrepresentation claims are subject to Rule 9(b), which requires a claim to state with particularity the circumstances constituting fraud or mistake.[8] "A

---

[8] A claim for negligent misrepresentation is subject to the same heightened pleading standard as fraud when it is based on the same operative facts as a fraud claim. *Lone Star Fund v. Barclays Bank*, 594 F.3d 383, 387, n. 3 (5th Cir. 2010).

claim generally satisfies the particularity standard of Rule 9(b) when the plaintiff pleads the time, place, and contents of the false representation and the identity of the person making the representation."  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).[9]  A plaintiff can generally aver conditions of the mind, such as the defendant's knowledge and intent in making the false statement.  Fed. R. Civ. P. 9(b); *see also Willard*, 336 F.3d at 384.

United's fraud, nondisclosure, and negligent misrepresentation causes of action satisfy Rule 9(b)'s particularity requirement because United specifically identifies thousands of fraudulent claims, including who submitted each claim to United, what in each claim constituted a misrepresentation or omission, when each claim was submitted to United, where the services were purportedly performed and from where claims were purportedly submitted, and how Defendants profited from the submission of the fraudulent claims.  [*See* ECF No. 1 ¶¶ 84-90; 108-113.]  Further, United pled the mechanics of the fraudulent scheme, including who was involved, each person or entity's particular role, and how the scheme was executed.  [*See id.* ¶¶ 34-77].  United also describes what Defendants received as a result of the scheme.  [*See id.* ¶¶ 35-37; 91-98; 114-117.]

As to the Individual Defendants, United's Complaint includes specific allegations how they each furthered the fraudulent scheme by knowingly directing or participating in it.  *See*

_____

[9] If the facts relating to the alleged fraud are uniquely within the perpetrator's control, *see Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003), or where fraud occurred over a long period of time and consists of numerous acts, Rule 9(b) is applied less stringently.  *See U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206 (E.D. Tex. 1998) ("It has been widely held that where the fraud allegedly was complex and occurred over a period of time, the requirements of Rule 9(b) are less stringently applied.").  While United pleads that many facts relating to the fraud are uniquely in Defendants' possession and its causes of action could be evaluated under the more flexible application of Rule 9(b), its fraud, nondisclosure, and negligent misrepresentation causes of action satisfy a strict application of Rule 9(b).

[ECF No. 1 ¶¶ 35, 43, 51, 55, 58, 71-72, 80-82, 85-89, 93-95, 104-105, 108-112, 115, 117, 136-140.]  For instance, United's Complaint asserts that Michael Murphy knowingly directed and participated in the scheme by, among other acts, executing certain agreements in furtherance of the scheme and instructing IAM to submit claims containing false and fraudulent information. [*Id.* ¶ 136.].  Jesse Saucedo, Jr. knowingly directed and participated in the scheme by, among other acts, executing certain agreements in furtherance of the scheme and making illegal payments to induce persons to participate in the scheme,.  [*Id.* ¶ 137.]  Samantha Murphy knowingly directed and participated in the scheme by, among other acts, taking multiple actions to cover up complaints of fraudulent billing and instructing NMH and CMH employees to transfer millions of dollars in furtherance of the scheme.  [*Id.* ¶ 138].  Lynn Murphy knowingly directed and participated in the scheme by, among other acts, managing the submission of claims containing false and fraudulent information and creating documents meant to mislead United's investigators.  [*Id.* ¶ 139.].  Finally, Julie Pricer knowingly directed and participated in the scheme by, among other acts, managing the creation of fraudulent invoices and instructing NMH and CMH employees to transfer money in furtherance of the scheme.  [*Id.* ¶ 140].  United has gone well beyond what is necessary to satisfy Rule 9(b).  The Individual Defendants' Motion should be denied.

### 2.    United states a claim for fraudulent transfer.

The Individual Defendants contend that United has insufficiently pleaded its fraudulent transfer claim because there is insufficient "factual particularity with respect to intent." [ECF No. 60, p. 13.] The Individual Defendants again ignore United's factual allegations, which specifically identify the fraudulent transfers and explain how they were essential to the

successful execution of the fraudulent scheme; without the fraudulent transfers, Defendants would not have profited.

"A cause of action for fraudulent transfer must assert that there was actual or constructive fraudulent intent." [ECF No. 60, p. 13 (citing *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. App. 2007).] Actual fraudulent intent exists where transfers are made "with actual intent to hinder, delay, or defraud any creditor." *U.S. Bank Nat'l Ass'n v. Verizon Comms. Inc.*, 817 F. Supp. 2d 934, 940 (N.D. Tex. 2011) (citing Tex. Bus. & Com. Code § 24.005(a)). "[F]raudulent intent may be inferred from a consideration of several non-exclusive factors, sometimes called 'badges of fraud.'" *Wohlstein v. Aliezer*, 321 S.W.3d 765, 777 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing Tex. Bus. & Com. Code § 24.005(b)). Under Rule 9(b), intent may be alleged generally. As framed by the court in *U.S. Bank*: "The question on this motion to dismiss, therefore, is whether the plaintiff has alleged enough facts, and with sufficient detail, for the court to reasonably infer that the defendants intended to hinder, delay, or defraud [a third-party's] creditors by consummating the allegedly fraudulent transfers." 817 F. Supp. 2d at 940, n.1 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009)).

Here, United alleges that the transfers were "made with the actual intent to hinder, delay, and defraud United and in furtherance of the myriad frauds that were perpetrated against it." [ECF No. 1, ¶ 171.]  While the Individual Defendants assert that this is a "hollow recitation," [ECF No. 60, p. 14], they simply ignore that United alleges facts that directly support the allegation. [*See* ECF No. 1, ¶¶ 92, 93, 115-117.] Indeed, the allegation does not stand alone; read in context with the dozens of paragraphs explaining the overarching fraudulent scheme, the allegation of fraudulent intent is sufficient. *See U.S. Bank*, 817 F. Supp. 2d at 940, n.2 (citing *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

The Individual Defendants also ignore that United identifies **several** of the "badges of fraud" that are specifically applicable to these circumstances and are also supported by other factual allegations. [ECF No. 1, ¶¶ 169-172.] Similar allegations have repeatedly been held to support a claim for fraudulent transfers. *See U.S. Bank*, 817 F. Supp. 2d at 940 (citing *Kaye v. Lone Star Fund v. (U.S.), L.P.*, 453 B.R. 645, 671–72 (N.D. Tex. 2011)). The Individual Defendants do nothing more than challenge **one** of those several badges, by arguing that United's Complaint fails to allege facts as to how "Defendants should or could have known of NMH and CMH's financial solvency." [ECF No. 60, p. 14.] Even this argument ignores the allegations in United's Complaint. United's Complaint alleges that Defendants targeted financially-strained rural hospitals, like NMH and CMH, had expansive control over the management and operation of NMH and CMH, and forced NMH and CMH to transfer the majority of funds they received to Defendants. [ECF No. 1 ¶¶ 1-5, 50-51, 73-77, 81, 92-96, 115-117, 172.] United has pleaded enough facts for the Court to reasonably infer that Defendants ordered transfers with actual intent to hinder, delay, or defraud United. Thus, the Individual Defendants' argument fails.

### 3.    United states a claim for tortious interference with contract.

To state a claim for tortious interference with contract under Texas law, a plaintiff must plead four elements: (1) the existence of a contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss. *See Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 493 (5th Cir. 2008) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). "To be legally capable of tortious

interference, the defendant must be a stranger to the contract with which [he or she] allegedly interfered." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

United has stated a claim for tortious interference with contract. United's Complaint identifies two existing contracts: network agreements between United and NMH and United and CMH. [*See* ECF No. 1, ¶¶ 79, 102, 148.] United alleges that each Defendant, with the exception of AHL and LMK, "willfully and intentionally interfered with [those] contracts" by using CMH and NMH to disguise out-of-network lab services so that United would incorrectly reimburse CMH and NMH for the fraudulent claims under United's contracts with the rural hospitals, which was a fundamental aspect of executing the fraudulent scheme detailed throughout United's Complaint. [*Id.* ¶¶ 149-153.] And United alleges that this interference proximately caused United's actual loss. [*Id.*] These allegations are sufficient to state a claim for tortious interference with contract. *See U.S. Enercorp, Ltd. v. SDC Mont. Bakken Expl., LLC*, 966 F. Supp. 2d 690, 705-06 (W.D. Tex. 2013) (Ezra, J.) ("[The plaintiff] need only allege that [the d]efendants willfully and intentionally interfered with [a] contract and that this interference caused actual damage.").

The Individual Defendants, however, contend that United must allege that Defendants knew the terms of the contracts and intentionally interfered with those particular terms. [ECF No. 60, p. 16.] United has alleged facts from which it is more than plausible that Defendants knew of United's contracts with NMH and CMH and knew that they were subverting those contracts to defraud United by using the hospitals to submit claims to be paid under the contracts, even

though the hospitals did not perform the services.[10] For example, United alleges that Defendants targeted rural hospitals that have contracts with United, [ECF No. 1, ¶ 50], that Defendants took actions to make it seem like there was a legitimate basis to bill United using the hospitals' credentials, [*id.* ¶ 52], and that by billing lab services as though they were referred to and performed by United's Network hospitals, Defendants were able to subvert United's two-tiered provider system, which is intended to make health care more affordable and prevent fraud, waste, and abuse. [*See id.* ¶ 65.] These allegations are more than sufficient to survive a Rule 12(b)(6) motion to dismiss.

### 4.    United states a claim for theft under the Texas Theft Liability Act.

The Individual Defendants argue that United's Texas Theft Liability Act claim should be "dismissed for the same reasons the fraud claims should be dismissed." [ECF No. 60, p. 17.] Again, this argument ignores the myriad allegations describing Defendants' misleading, deceptive, and fraudulent conduct.

To state a claim for theft under the Texas Theft Liability Act, a plaintiff must plead: (1) the plaintiff had a possessory right to property; (2) the defendant unlawfully appropriated property in violation of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft. *Simmonds Equip., LLC v. GGR Int'l, Inc.*, 126 F. Supp. 3d 855, 870 (S.D. Tex. 2015). Under Texas Penal Code § 31.03(b)(1), intentionally taking property without the owners' effective consent is unlawful. Consent is not effective if "induced by deception or coercion." Tex. Penal Code § 31.01(3)(A). "Deception" means "creating or confirming by words or conduct

---

[10] The case cited by the Individual Defendants, *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674-75 (S.D. Tex. 2010), dealt with a motion for summary judgment and was identifying ways that the plaintiffs can show that interference was willful and intentional.

a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." *Id.*

United sufficiently alleges Defendants' "deception" because it identifies at least seven different ways that Defendants intentionally misrepresented information to United, including where lab services were referred, where lab services were performed, who performed the lab services, the type of services that were performed, the authorization of the services, why the services were ordered or performed, and whether the services were performed at all. [ECF No. 1, ¶¶ 84-90, 108-113.[11]] United's Complaint also includes actual examples of forged lab results and other measures that were intended to disguise Defendants' scheme and deceive United. [*Id.* ¶¶ 68, 69.] The Individual Defendants' motion should be denied.

### 5.    United states a claim for money had and received.

A claim for money had and received arises under Texas law "when a party obtains money which in equity and good conscience belongs to another." *Mims v. Stewart Title Guar. Co.*, 521 F. Supp. 2d 568, 574 (N.D. Tex. 2007) (internal quotation marks omitted). "The doctrine is not based on wrongdoing on the part of the defendant but looks only to the justice of the case and inquiries whether the defendant has received money which rightfully belongs to another." *Id.* (internal quotation marks omitted).

Here, United has properly pled its claim for money had and received. The Individual Defendants argue that they did nothing wrong, contending, incredibly, that "United has not provided any facts to support its assertion that, in fairness, the money for those services belongs

---

[11] A Texas Theft Liability Act claim is not subject to Rule 9(b). *See Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Texas*, No. 11-cv-2086, 2012 WL 3028107, at *5 (S.D. Tex. July 24, 2012) (holding that Texas Theft Liability Act does not implicate "9(b)'s heightened pleading standard for fraud claims"). Regardless, United's allegations satisfy Rule 9(b).

to United." [ECF No. 60, pp. 17-18]. This argument, once again, ignores the numerous allegations of wrongdoing set forth in the Complaint. [*See* ECF No. 1, ¶¶ 10-11, 18, 85, 89, 112; ECF No. 1-1.] These allegations, among dozens of others, show that justice requires the return of the money that Defendants stole from United.  Further, the Individual Defendants contend that United fails to allege "that the Individual Defendants retained any of the funds paid to the Labs." [ECF No. 60, p. 18.].  But, that is not the case, as paragraphs 176, 180, 181 allege that the Individual Defendants obtained money which rightfully belongs to United.  [*See* ECF No. 1 ¶¶ 176, 180, 181.]

### C.    United does not need to pierce the corporate veil to bring claims against the Individual Defendants.

The Individual Defendants argue that this Court should dismiss the claims against the Individual Defendants "because of United's failure to pierce the corporate veil." [ECF No. 60, pp. 18-19.] This argument fails because the "longstanding rule" in Texas is that a plaintiff does not need to pierce the corporate veil to hold individuals liable for their knowing participation in fraudulent or other tortious conduct. *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002). Further, United's Complaint includes veil-piercing allegations; the Individual Defendants simply fail to address them. [ECF No. 1, ¶¶120, 122, 125.]

"A corporation's [agent] is personally liable for tortious acts which he directs or participates in during his employment." *O'Hare v. Graham*, 455 F. App'x 377, 380 (5th Cir. 2011) (quoting *Leyendecker & Assocs., Inc. v.* Wechter, 683 S.W.2d 369, 375 (Tex. 1984)). "Instigating, aiding, or abetting the wrongdoing constitutes participation." *Cass v. Stephens*, 156 S.W.3d 38, 62 (Tex. App.—El Paso 2004). "It is not necessary that the 'corporate veil' be pierced or even discussed." *Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631, 634 (Tex. App.—El Paso 1972, reh'g denied); *see also Kingston v. Helm*, 82 S.W.3d 755, 758 (Tex.

App.—Corpus Christi 2002, pet. denied) (internal quotation marks omitted); *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008, no pet.) ("In an action seeking to hold an agent individually liable for his tortious or fraudulent acts, the corporate veil is not required to be pierced.").

Here, United alleges that the Individual Defendants were knowing participants in the fraud perpetrated against United. [ECF No. 1, ¶¶ 17-21, 32, 119, 121, 123, 136-140.] The Individual Defendants are liable as principals for this conduct, so there is no need to "pierce the corporate veil." *See O'Hare*, 455 F. App'x at 380; *Miller*, 90 S.W.3d at 717; *Permian Petroleum Co.*, 484 S.W.2d at 634; *Kingston*, 82 S.W.3d at 758; *Sanchez*, 274 S.W.3d at 712. Even if United needed to pierce the corporate veil, the Complaint includes allegations sufficient to do so. [ECF No. 1, ¶¶120, 122, 125.] Thus, the Individual Defendants' veil piercing argument fails.

///

///

///

///

///

///

///

///

///

///

///

///

## IV.  CONCLUSION

For all of the foregoing reasons, United respectfully requests that this Court deny the Individual Defendants' Motion to Dismiss.

Dated this 8th day of November, 2018.

/s/ Scott P. Kerew
SCOTT P. KEREW, ESQ.
Georgia Bar No. 416629
*Admitted to this Court*
skerew@wwhgd.com
STEPHEN W. MOONEY, ESQ.
Texas Bar No. 14319100
smooney@wwhgd.com
**Weinberg, Wheeler, Hudgins,**
**Gunn & Dial, LLC**
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Telephone: (404) 876-2700

ANDREW G. JUBINSKY, ESQ.
Texas Bar No. 11043000
andy.jubinsky@figdav.com
RAYMOND E. WALKER, ESQ.
Texas Bar No. 24037663
ray.walker@figdav.com
**Figari + Davenport, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000

*ATTORNEYS FOR THE UNITED ENTITIES*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th, day of November, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system pursuant to Local Rule 5.1(d), which will automatically send notification of such filing to all counsel of record pursuant to Local Rule 5.1(d).

David W. Navarro, Esq.
dnavarro@hfgtx.com
David Jed Williams, Esq.
jwilliams@hfgtx.com
Cassandra Garza Matheson
cmatheson@hfgtx.com
HORNBERGER FULLER & GARZA INCORPORATED
7373 Broadway, Suite 300
San Antonio, TX 78209

John J.E. Markham, Esq.
jmarkham@markhamread.com
Bridget A. Zerner, Esq.
bzerner@markhamread.com
MARKHAM & READ
One Commercial Wharf West
Boston, MA 02110

Yussuf Abdel-Aleem
yussuf@josephaleem.com
JOSEPH ALEEM & SLOWIK LLC
1355 Peachtree St. NE, Suite 700
Atlanta, GA 30309

_/s/ Scott P. Kerew_