UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MISSION TOXICOLOGY, LLC and | § | No. 5:17-CV-1016-DAE |
| SUN CLINICAL LABORATORY, | § | *Consolidated with* |
| LLC, | § | No. 5:18-CV-347-DAE |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITEDHEALTHCARE | § | |
| INSURANCE COMPANY, | § | |
| UNITEDHEALTHCARE OF | § | |
| TEXAS, INC., | § | |
| UNITEDHEALTHCARE OF | § | |
| FLORIDA, INC., and UNITED | § | |
| HEALTHCARE SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |

<u>ORDER DENYING DEFENDANTS'S MOTION TO DISMISS (DKT. # 47)</u>

Before the Court is Defendants UnitedHealthcare Insurance Company,

UnitedHealthcare of Texas, Inc., UnitedHealthcare of Florida, Inc., and United

Healthcare Services, Inc.'s (collectively, "Defendants") Rule 12(b)(1) Motion to

Dismiss Plaintiffs' Second Amended Complaint.  (Dkt. # 47.)  Pursuant to Local

Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing.

After careful consideration of the memoranda filed in support of and in opposition

to the motion, the Court, for the reasons that follow, **DENIES** Defendants' Rule 12(b)(1) Motion to Dismiss Plaintiffs' Second Amended Complaint.[1]  (Dkt. # 47.)

BACKGROUND

As alleged in their complaint, Plaintiffs Mission Toxicology LLC and Sun Clinical Laboratory, LLC (collectively, "Plaintiffs") perform laboratory services, including urinalysis, blood, DNA, and allergy testing, for many healthcare facilities, referring providers, and hospitals throughout the United States.  (Dkt. # 28 at 2, 5.)  Defendants are related entities that insure and administer various employee health and welfare benefit plans.  (Id.)  The plans at issue in this case are governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  (Id.)  As part of its administration of these plans, Defendants exercise discretion as an ERISA fiduciary in deciding whether to reimburse benefits claims for services, including the laboratory services rendered by Plaintiffs.  (Id. at 6.)

---

[1] Consolidated with this action is a related case in which two of the Defendants in this action are suing the Plaintiffs in this action and others for various claims including fraud and tortious interference with contract.  (See Case No. 5:18-CV-347-DAE (W.D. Tex.)).  Defendants in that case have filed motions to dismiss under Rule 12(b)(6).  Filed concurrently with this Order is a related Order adjudicating those motions to dismiss.  Because the facts alleged in each respective complaint are different, and because on a Rule 12(b)(6) motion to dismiss a complaint the Court is generally limited to considering the facts alleged in the complaint, the Court deems it prudent to issue separate orders, even though the cases are consolidated.

Defendants' plans allow members to choose to obtain healthcare services from either network providers or non-network providers.  (Id. at 7.) Network providers are providers with whom Defendants have entered into agreements whereby Defendants will reimburse the providers at specified rates for medical services provided to Defendants' insureds and the network providers agree to provide services to Defendants' insured at those rates.  (Id.)

Two such network providers with which Defendants have agreements are two rural hospitals, Newman Memorial Hospital ("Newman") and Community Memorial Hospital ("CMH").  (Id. at 10.)  Plaintiffs have contracts with Newman and CMH, and other similar facilities, for Plaintiffs to provide the facilities with the specialized testing they offer, which allows such facilities to handle a higher volume of physician order for laboratory services than they would otherwise be able to handle.  (Id. at 9.)

Newman, CMH, and Plaintiffs receive referrals for these laboratory services from healthcare providers who require such services for their patients. (Id. at 10.)  After receiving such referrals and performing the requested testing, Plaintiffs or third-party billers submit bills to the individuals for whom the laboratory services were performed, or to third-party insurance payors, like Defendants.  (Id. at 10–11.)  In this particular case, services performed by Plaintiffs for Defendants' insureds were billed to United by Newman and CMH, and

Defendant's insureds were billed by Newman and CMH for payment of any applicable coinsurance, deductibles, and co-pays.  (Id. at 12–13.)

Plaintiffs allege that on or about December 16, 2016, Defendants began denying all claims for medical services performed by Plaintiffs and requesting medical records in support of those claims.  (Id. at 13–14.)  In response, Newman's third-party biller submitted various additional documentation for some three thousand claims, which Plaintiffs assert sufficiently demonstrated the validity of the claims and that the services were performed as ordered by the referring physicians.  (Id. at 14–15.)  Defendants then remitted payment for many of the claims they had previously denied, after reviewing the provided documentation.  (Id. at 15.)

On May 5, 2017, Defendants again began denying all laboratory services claims submitted to them on behalf of Newman and continues to do so.  (Id.)  Defendants also allegedly began demanding a patient's entire medical record for each claim submitted, stating the records previously provided were insufficient.  (Id.)  Plaintiffs assert this conduct is part of a "scheme to deny the laboratory services claims by requesting medical records inapplicable to the [l]aboratory [s]ervices" provided by Plaintiffs."  (Id. at 16.)  Plaintiffs also assert Defendants failed to appropriately review the medical records that were provided and issued

blanket denials on all claims for laboratory services provided by Plaintiffs to Defendants' insureds.  (Id.)

Plaintiffs allege that Defendants have wrongfully refused to pay approximately 12,111 claims for laboratory services provided by Plaintiffs for Defendants' insureds on behalf of Newman and an additional 2,156 claims for services provided on behalf of CMH.  (Id.)  Plaintiffs in this action further allege that to date Defendants have failed to reimburse them for $49,149,619.14 in such laboratory services.  (Id.)

Plaintiffs in this action assert that they received assignments of benefits ("AOBs") from the individual insureds to whom they provided services, "placing them in the shoes of those individuals and entitling Plaintiffs to all rights, title and benefits extending from the coverage policies of [Defendants'] insureds." (Id. at 13.)  According to Plaintiffs, these AOBs convey to them "the legal right to pursue [the denied] claims for benefits on behalf of" Defendants' insureds.  (Id. at 17.)

Plaintiffs initially asserted six claims for relief under ERISA and Texas state law.  (See Dkt. # 1.)  However, pursuant to a motion to dismiss filed by Defendants, Plaintiffs' initial complaint was dismissed, and Plaintiffs were granted leave to replead only their ERISA claim for benefits under 29 U.S.C. § 1132(a)(1)(b).  (Dkt. # 27.)  Plaintiffs' operative complaint now asserts one claim

for benefits under 29 U.S.C. § 1132(a)(1)(b), for the cost of the medical services they provided, alleging a laundry list of plan terms that were violated by Defendants' conduct. (Id. at 19–24.)

Defendants then filed the instant motion to dismiss Plaintiffs operative complaint, which asserts that this Court lacks subject matter jurisdiction over this action. (Dkt. # 47.) Plaintiffs filed a response in opposition to Defendants motion, and Defendant filed a reply in support of their motion. (Dkts. ## 56, 58.)

LEGAL STANDARD

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a case will be dismissed if a court lacks subject-matter jurisdiction over the suit. Fed. R. Civ. P. 12(b)(1). When evaluating a Rule 12(b)(1) motion, the Court may dismiss a suit "for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Freeman v. United States, 556 F.3d 326, 334 (5th Cir. 2009) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (internal citations omitted).

DISCUSSION

Defendants' motion asserts that Plaintiffs lack both Article III and statutory standing to assert the ERISA claim at issue in this action.  (Dkt. # 47 at 6.)  The Court will address each of these arguments in turn.

I.    Article III Standing

Constitutional standing contains three elements.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

Because Defendants' ERISA claim is derivative of the assigned rights of Defendants' insureds, Defendants only have standing to assert their claims if the individual insureds have suffered an injury in fact.  Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Texas, Inc., 16 F. Supp. 3d 767, 777 (S.D. Tex. 2014) (citing Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan, 426 F.3d 330, 334–35 (5th Cir. 2005)).  "Under this theory [of derivative standing], the medical provider stands in the shoes of the ERISA beneficiary to

assert its rights under the plan terms, rather than asserting some independent legal duty owed directly to the healthcare provider." Spring E.R., LLC v. Aetna Life Ins. Co., No. H-09-2001, 2010 WL 598748, at *2 (S.D. Tex. Feb. 17, 2010).

Defendants assert Plaintiffs lack standing because there was no injury in fact suffered by their insureds. This argument is premised on the fact that under the terms of Defendants' network participation agreements, network providers, like Newman and CMH, may not charge the individual insureds for "covered services beyond copayments, coinsurance, or deductibles" and "may not balance bill the [insured] for additional payments of covered services beyond their normal cost share amount." (Dkt. # 47-3 at 57–58.) Additionally, any dispute a provider may have over payment of claims must be resolved between Defendants and the medical provider. (Id. at 55.) Thus, according to Defendants' argument, their insureds have suffered no injury in fact because they "owe nothing for claims submitted by NMH or CMH, even if the claims were denied." (Dkt. # 47 at 15.)

Defendants' argument relies heavily on Mid-Town Surgical Center, L.L.P. v. Humana Health Plan of Texas, Inc., 16 F. Supp. 3d 767 (S.D. Tex. 2014). Mid-Town Surgical held that the plaintiff failed to allege facts sufficient to show standing on a claim under 29 U.S.C. § 1132(a)(1)(B) because the plaintiff had failed to allege "any distinct injury [to the individual insureds], such as out-of-pocket losses or personal liability for . . . charges in the event of [the

8

insurer's] non-payment that would confer derivative standing on [the plaintiff] to assert the [individual insureds'] claims." Id. at 777.  Based on this language, Defendants argue that because their insureds had no personal liability for the services rendered by Plaintiffs beyond co-pay, deductibles, and co-insurance, which they would be required to pay regardless, they suffered no distinct injury-in-fact.  However, that portion of the decision in Mid-Town Surgical relies on North Cyprus Medical Center Operating Company v. Cigna Healthcare, No. 4:09-cv-2556, 2012 WL 8019265 (S.D. Tex. June 25, 2012).  And the portion of the North Cyprus opinion relied on by the court in Mid-Town Surgical was vacated and remanded by the Fifth Circuit.  See N. Cyprus Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare, 781 F.3d 182, 207 (5th Cir. 2015).

Moreover, the Fifth Circuit's opinion in North Cyprus strongly counsels reaching the opposite conclusion as that reached in Mid-Town Surgical and advanced by Defendants.  Although North Cyprus dealt with a different factual situation from the instant case in which the medical services at issue were provided by non-network providers and thus individual insureds were at theoretical risk of being obligated to pay them, the reasoning employed by the Fifth Circuit and the conclusion it reaches seems equally applicable to the instant case.  Even though the individual insureds in this case likely do not owe anything for the disputed claims submitted by Newman and CMH, their contractual agreement with Defendants

under their insurance plans provide that Defendants will pay medical service providers for medical services covered under the terms of the plan.  To the extent Plaintiffs' allegation is that Defendants refused to properly pay the service provider for services covered by the insurance plans, Plaintiffs are alleging Defendants failed to fulfill its contractual obligations to the insureds under the terms of the plan.

In North Cyprus, the Fifth Circuit quoted with approval a decision of the Southern District of New York, which held that "if a provider 'has alleged it is an assignee of the Patient and that [the insurer] failed to fulfil its contractual obligations to the Patient[,] this is all that is required to demonstrate Article III standing.'"  781 F.3d at 193 (first alteration in original).  According to the Fifth Circuit, such a "failure to pay . . . denies the patient the benefit of her bargain" because the insurer is "failing to uphold the bargain by paying for covered services."  Id.  Because "[t]he patients have thus allegedly been deprived of what they contracted for, [they have alleged] a concrete injury."[2]  Id. at 194.

Finally, as Defendants do in this case, Defendants in North Cyprus urged the Fifth Circuit that it "should be persuaded by courts which have found no

---

[2] It should be noted that failure to pay providers places the insureds at imminent risk of being unable to continue to see those providers who are not being paid services rendered to them.

Article III injury in the absence of a threat that patients will be billed . . . ." Id. at

194.  However, the Fifth Circuit was not persuaded,

> in the face of the principles already discussed and our long endorsement
> of ERISA assignments.  The patients here assigned their rights under
> their insurance contracts to [the plaintiff], and [the plaintiff] has
> standing to enforce the contracts.  We have consistently held that the
> ability of patients to assign their claims to medical providers is both
> permissible and beneficial.

Id. at 194–95; see also Harris Methodist Fort Worth, 426 F.3d 337 (noting the

benefits of allowing assignment to health care providers and stating that "[t]o deny

standing to health care providers as assignees of beneficiaries of ERISA plans

might undermine Congress' goal of enhancing employees' health and welfare

benefit coverage").

Accordingly, the Court concludes that Plaintiffs have alleged an

injury-in-fact sufficient to convey Article III standing.

II.    Statutory Standing

ERISA ordinarily only permits a private civil action to be brought by a

statutorily defined "participant" or "beneficiary."  29 U.S.C. § 1132(a).  However,

"[i]t is well established that a healthcare provider, though not a statutorily

designated ERISA beneficiary, may obtain standing to sue derivatively to enforce

an ERISA plan beneficiary's claim."  Harris Methodist Forth Worth, 426 F.3d at

333–34.  "It is clear in this Circuit that a health care provider may possess standing

under ERISA by virtue of a valid assignment."  Dallas Cty. Hosp. Dist. v. Assocs.

Health & Welfare Plan, 293 F.3d 282, 285 (5th Cir. 2002).  To decide what rights,

if any have been assigned, the Court "must 'examine and consider the entire

writing and give effect to all provisions such that none are rendered meaningless.'"

Harris Methodist Forth Worth, 426 F.3d at 334.

         Plaintiffs allege in their complaint that they received signed AOBs

from each of the patients to whom the rendered services related to the disputed

claims and filed an exemplar AOB as a supplemental attachment to their

complaint.  (Dkts. ## 28 at 13; 31-4, Ex. B at 2.)  The AOB states in relevant part:

> In consideration of services rendered, I transfer and assign any benefits
> of insurance to Mission Toxicology and authorize Mission Toxicology
> to submit claims on my behalf directly to my private health insurance
> provider/health plan.  I authorize Mission Toxicology to release to my
> insurance carrier or health plan providing my medical benefits and any
> health plan of which I am a member, any medical information needed
> for claims or payment purposes.  I understand that Mission Toxicology
> is an out of network provider. . . . I agree this Assignment of Benefits
> and Consent will cover all medical services rendered by Mission
> Toxicology to me until such authorization is revoked in writing by me.

(Dkt. # 31-4, Ex. B at 2.)

         Defendants point to the language in the AOB indicating that Mission

Toxicology is an "out of network provider" in asserting that the AOB only assigns

to Plaintiffs the insureds' benefits under the insurance plan for out of network

services.  (Dkts. ## 47 at 17–18; 58 at 12–14.)  According to Defendants, because

Plaintiffs claims assert recovery for in-network services billed by network

providers Newman and CMH, these benefits are not covered by an assignment of

out of network benefits such as that contained in the AOBs.  (Id.)  Defendants

therefore conclude that Plaintiffs have not been assigned the benefits for which

they are suing, and therefore lack derivative standing to pursue their claims.  (Id.)

However, Defendants' argument ignores the last sentence of the AOBs

which states, "I agree this Assignment of Benefits and Consent will cover all

medical services rendered by Mission Toxicology to me."  (Dkt. # 31-4, Ex. B at

2.)  In determining the scope and application of an AOB, the Court "must 'examine

and consider the entire writing and give effect to all provisions such that none are

rendered meaningless.'"  Harris Methodist Forth Worth, 426 F.3d at 334.  The

distinction between in-network and out of network benefits is therefore immaterial.

By virtue of the AOBs, the individual insureds have assigned to Plaintiffs "any

benefits of insurance" related to "all medical services rendered by" them.  (Dkt.

# 31-4, Ex. B at 2.)  This broad language thus covers any benefits individual

insureds are entitled to for any medical services rendered by Plaintiffs, including

both out of network services rendered through a direct relationship with Plaintiffs,

as well as the in-network services in this case rendered through an intermediate

relationship involving network hospitals like Newman and CMH.

Accordingly, the Court concludes that Plaintiffs have sufficiently

demonstrated they possess statutory standing to pursue this action.

Because Plaintiffs possess both constitutional as well as statutory standing in this case, Defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.  (Dkt. # 47.)

<u>CONCLUSION</u>

For the reasons stated, the Court **DENIES** Defendants' Rule 12(b)(1) Motion to Dismiss.  (Dkt. # 47.)

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, August 20, 2019.

_____

David Alan Ezra
Senior United States Distict Judge

14