UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MISSION TOXICOLOGY, LLC., and SUN CLINICAL LABORATORY, LLC,<br><br>*Plaintiffs*,<br>v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY, et al.<br><br>*Defendants.* | No. 5:17-CV-01016- DAE (lead case) |
| UNITEDHEALTHCARE INSURANCE COMPANY, INC. and UNITEDHEALTHCARE SERVICES, INC.<br><br>*Plaintiffs*,<br>v.<br><br>MICHAEL MURPHY, M.D., et al.<br>*Defendants*. | No. 5:18-CV-00347-DAE (consolidated case) |

**DEFENDANT MICHAEL MURPHY'S OPPOSITION TO UNITED'S
MOTION TO COMPEL FINANCIAL DOCUMENTS AND FOR FEES AND COSTS**

Defendant Michael Murphy hereby opposes United's Motion to Compel Michael Murphy to Produce Financial Documents and for Fees and Costs (Dkt. No. 181) (herein, "Motion").

**Attempt to Resolve Matter without Motion Practice**

As of the time of United's filing of its Motion, Dr. Michael Murphy and his counsel believed they were still engaged in a meet and confer to resolve this matter and contrary to United's assertion, there has been no abrupt change in position. This motion by United is jumping the gun and in any event is without merit.

**Facts**

Months ago, Counsel for Lab Defendants received a document request from United which was way over the top in terms of its breadth and intrusiveness. *See*, Exhibit A to the Declaration of Lynn Murphy, sworn to March 11, 2019 ("Murphy Dec.").[1] We responded with objections (Murphy Dec. Exhibit B) and our Response set forth both their Requests followed by our Responses. These Requests and Responses are worth quoting *verbatim* to show their breadth. The word "your" is defined in United's Request (at page 6) as follows:

"You" and "Your" refers to Michael Murphy, M.D.

"Entity Defendant" was defined as:

"Entity Defendants" refers to Sun Clinical Laboratory, LLC, Mission Toxicology, LLC, Integrity Ancillary Management, LLC, Sun Ancillary Management, LLC, Alternate Health Labs, Inc., and LMK Management, LLC.

Using these definitions, United asked as follows and we responded as follows:

**REQUEST NO. 1**: One copy of **your** bank statements, brokerage statements, Certificate of Deposit statements, savings account statements, and retirement account statements, for the period of January 1, 2016 through the present.

**RESPONSE NO. 1:**
OBJECTION: Overbroad, calls for confidential and proprietary information, calls for personal and highly sensitive information, calls for irrelevant information, disclosure is not proportional to the needs of the case, and it subjects the party commanded to produce documents to an undue burden because the time and expense required for identifying and producing all such documents is disproportionate to and outweighs whatever minimal benefit, if any, could be hoped for from such discovery.

Moreover, Entity Defendants have produced or are in the process of producing their bank records and QuickBooks records for 2016 to 2019 and have already produced payroll information from Alternate Health Labs, Inc. and Integrity Ancillary Management, LLC regarding Dr. Murphy (see production on April 29, 2019). These documents should provide all relevant information that

---

[1] The Declaration of Lynn Murphy accompanying this response is filed under seal with a motion seeking leave for the declaration to be sealed due to the personal and confidential financial account details identified and discussed therein however the exhibits to the declaration are not confidential and are filed on the docket publicly.

1

would be disclosed in the documents called for by this request.

**REQUEST NO. 2:** Documents, including wire transfer details, checks, and deposit slips, reflecting the details of any transactions between your personal accounts and the accounts of any Entity Defendants, Individual Defendants, Affiliated Entities, CMH, or NMH between January 1, 2016 and the present.

**RESPONSE NO.2:**

OBJECTION: Overbroad, calls for confidential and proprietary information, calls for personal and highly sensitive information, calls for irrelevant information, disclosure is not proportional to the needs of the case, and it subjects the party commanded to produce documents to an undue burden because the time and expense required for identifying and producing all such documents is disproportionate to and outweighs whatever minimal benefit, if any, could be hoped for from such discovery.

Moreover, the Entity Defendants have produced or are in the process of producing their bank records and QuickBooks records for 2016 to 2019. These documents should provide all relevant information that would be disclosed in the documents called for by this request.

**REQUEST NO. 4:** All documents regarding or reflecting any amounts of money that you, any Entity Defendant, any Individual Defendant, CMH, or NMH ultimately received from any payment United made to CMH or NMH between January 1, 2016 and December 31, 2018 on any Laboratory Claim.

**RESPONSE NO. 4:**

OBJECTION: Overbroad, calls for confidential and proprietary information, disclosure is not proportional to the needs of the case, and it subjects the party commanded to produce documents to an undue burden because the time and expense required for identifying and producing all such documents is disproportionate to and outweighs whatever minimal benefit, if any, could be hoped for from such discovery.

The Entity Defendants have produced or are in the process of producing their financial records for 2016 through 2019. These documents should provide all relevant information that would be disclosed in the documents called for by this request.

**REQUEST NO. 5**: One copy of Clover Trail Capital, L.L.C.'s bank statements, brokerage statements, and Certificate of Deposit statements for the period of January 1, 2016 through the present.

**RESPONSE NO. 5:**

Overbroad, calls for confidential and proprietary information, calls for personal and highly sensitive information, calls for irrelevant information, disclosure is not proportional to the needs of the case, and it subjects the party commanded to produce documents to an undue burden because the time and

>expense required for identifying and producing all such documents is disproportionate to and outweighs whatever minimal benefit, if any, could be hoped for from such discovery.

As can be seen, these United requests were not limited to accounts into which United monies had been deposited. Request No. 1 asked for any bank accounts of Dr. Michael Murphy from 2016 through the present, meaning July 2019, which is a date fully two years after United threatened the Hospitals and thus shut down the Lab Outreach Program. Nor are the requests limited to accounts having any relation to that Program. It also called for tax returns of entities.

We did not "force" (United Compel Motion, p. 1) United to move to compel any documents. They did so but after receiving our response, United counsel sensibly agreed to cut back its request and that agreement is embodied in Docket No. 148 and reads in part as follows:

>The parties have reached an agreement about the documents which are the subject of the above-referenced Motion to Compel. Defendants will promptly produce *all documents they possess relating to all bank, brokerage, or other accounts into which any money, directly or indirectly, was received by deposit or otherwise generated by the Lab Outreach Program, which received payments from United, for the years 2016 to the present.* This production will include all documentation from these accounts, including statements, copies of checks, deposit slips, and wire transfer details where available, not just documentation specifically showing receipt of monies from the Lab Program. The production will be designated Attorney's Eyes Only under the Protective Order (Dkt. 50) with the agreement that these documents may be presented by United to an expert if needed for any purpose related to this litigation. On this basis, United withdraws its motion and the parties agree that this will be without prejudice to United renewing its motion or otherwise seeking additional bank records in the future if they deem such production is or becomes relevant and without prejudice of the Defendants to oppose any such future request or motion.

(emphasis added)

Based on this much more reasonable modification, we arranged production of all the documents in Dr. Murphy's possession which had received money from either Community Memorial Hospital or Newman Memorial Hospital. (Murphy Dec. ¶¶5-6) United never paid any

3

of the Defendants any money directly but instead paid money to these two hospitals after Integrity Ancillary Management, LLC had submitted bills to United for claims of those two hospitals for lab work done. (Murphy Dec. ¶5) When United approved these claims, it paid the money owed to either of the hospitals and, pursuant to agreements Defendants had with the hospitals, they in turn paid the Defendants the money they owed for the services rendered. (*Id.*)

We produced all the records to United that Murphy or the other Defendants possessed for accounts that received money from Newman or Community because some of that money had been received by the hospitals from United and thus was called for because the stipulation required production of documents in the Defendants' possession for accounts that received directly or indirectly from United. Murphy did not produce a "handful" (Motion, p. 2) of accounts, but rather produced the accounts that Murphy believed were called for under the stipulation.

It bears repeating that Murphy intended to and believed he did produce everything he possessed (*see*, Murphy Dec. ¶6), the term used in the stipulation. We chose that word because otherwise Defendants would have been required to pursue from the various banks involved many thousands of pages of documents over many years, many of which would have been entirely irrelevant to this case. United never pursued those documents from the banks even though the documents Murphy possessed and gave them revealed the account numbers from which they could identify the accounts and then subpoena what they wished. They apparently did not think that worthwhile. And while, as United indicates, Murphy and Jesse Saucedo produced financial records on November 11 and 13, 2019 (*see*, Bornstein Dec. ¶ 2, attached as App-1 to United's Motion to Compel), United now complains that Murphy did not produce documents that Murphy does not possess such as bank account records like cancelled checks, wire transfer information

4

and the like.

Almost two months later, on January 9, 2020, United's counsel sent a letter demanding more documents and claiming that they were due under the stipulation. In that letter they correctly quote the stipulation as requiring bank records from bank accounts into which United money was received. (*Id.* App. 6) Because this matter had, Defendants thought, been laid to rest by the stipulation and by the subsequent productions, we asked for time to obtain what United had stated to have been records that had not been produced. (*See,* Declaration of John Markham sworn to March 11, 2020, ¶ 4) During that time, Markham was informed by the clients that no records were withheld and that indeed some accounts produced should not have been and Markham so informed Bornstein. (*Id.* ¶ 7) It then turned out that on further review, Markham was informed that the bank accounts that had been produced (those on Graves Exhibit 1) all indeed had received money from United indirectly and Markham so informed Bornstein. (*Id.*)

Markham then suggested to Bornstein that since Bornstein was going to be taking the deposition of Lynn Murphy (who knew about these accounts) that next week, he should ask her rather than getting the information secondhand from Markham who actually indicated that he did not want to be answering fact questions when Ms. Murphy could do it on firsthand knowledge. (*Id.* ¶¶ 5, 8-9) Markham also told Bornstein that, at the offices where he was taking Lynn Murphy's deposition in San Antonio, that her son, Michael F. Murphy, worked there as well and he was familiar with all the accounts that belonged to his father and could provide additional information because he was their investment advisor. (*Id.* ¶ 8) Mr. Bernstein refused telling Markham he wanted Markham to do that. (*See,* Markham Dec. ¶ 9)

Just three days before Bornstein was to take the deposition of Lynn Murphy, Markham followed up with an email again suggesting that the best way to handle this was to have

5

Bornstein ask Mrs. Murphy about this matter. Markham wrote on March 2, 2019 (Markham Dec. Ex. A): "Will [Bornstein], I suggest that you either call me about this or hold off until you question Lynn on Thursday. I think you appear to have misunderstood." (*Id*. ¶ 9)

Surprisingly, on March 4, 2020, Bornstein instead filed his motion to compel the night before Ms. Murphy's deposition.

Moreover, and of more concern, in its motion United mischaracterizes the scope of the agreement we made as a bargain for withdrawing United's overbroad Document Request. In its Motion, at page 1, United starts out by telling this Court that:

> On November 8, 2019, Defendant Michal Murphy stipulated that if United would withdraw its motion to compel his financial records, *he would produce all statements for the accounts into which laboratory program proceeds, which included funds paid by United, could have flowed directly or indirectly*, as well as all records reflecting the details of the transactions running through those accounts.

This is not accurate. The actual agreement reads:

> The parties have reached an agreement about the documents which are the subject of the above-referenced Motion to Compel. Defendants will promptly produce *all documents they possess relating to all bank, brokerage, or other accounts into which any money, directly or indirectly, was received by deposit or otherwise generated by the Lab Outreach Program, which received payments from United, for the years 2016 to the present.* This production will include all documentation from these accounts, including statements, copies of checks, deposit slips, and wire transfer details where available, not just documentation specifically showing receipt of monies from the Lab Program. The production will be designated Attorney's Eyes Only under the Protective Order (Dkt. 50) with the agreement that these documents may be presented by United to an expert if needed for any purpose related to this litigation. On this basis, United withdraws its motion and the parties agree that this will be without prejudice to United renewing its motion or otherwise seeking additional bank records in the future if they deem such production is or becomes relevant and without prejudice of the Defendants to oppose any such future request or motion.

(*See,* Murphy Dec., ¶ 4 and Docket No. 148, p. 2)

The actual agreement thus did not provide that Defendants would produce all statements for accounts "into which laboratory proceeds, which included funds from United could have

6

flowed." Despite what United contends, rather, and by design, Defendants agreed to produce more limited documents. The actual agreement stated that what would be produced were records in Defendants' possession for accounts which "received payments from United" not "including funds from United." The language "received payments from United," the actual terms of the agreement, is simply not the same as "could have received payments from United."

Counsel Markham attempted to address these issues with United counsel but during these discussions, United counsel was demanding that Defendants' counsel provide factual explanations of all the accounts and records at issue. (Markham Dec. ¶¶ 5-9) But as Markham told Bornstein, Markham could not step into the role of a witness with personal knowledge to provide all the answers. (*Id.*) Markham wanted and thus proposed that the questions be posed directly to Lynn Murphy, who has knowledge of the accounts and financial activity, when the parties would already be together for her deposition as the corporate representative of Integrity Ancillary Management. (*Id.*) Part of the problem was that in the discussions between counsel, Bornstein kept insisting that what had to be produced was any account into which United money "could have been received." (*Id.*) Markham kept debating that construction and had lengthy discussions with Bornstein about how Murphy could not tell that United money going into the accounts produced (the transferor accounts which we had produced) meant that any particular transfer out of those accounts included United money, at least without questioning further about the accounts with Lynn Murphy. (*Id.*) Bornstein wanted Markham to find out and inform him instead. (*Id.*)

United filed its motion the night before the deposition of Lynn Murphy was to take place and while only 6 hours of the day were used for her deposition, United did not bother to question Lynn Murphy about these financial documents when she was present and available to do so.

(Murphy Dec., ¶ 14) Nor did United question Michael F. Murphy. (*Id*. ¶ 15)

## I.     Transaction Records for Already-Produced Accounts

Dr. Murphy's counsel conveyed that Dr. Murphy intended to and would comply with the prior stipulation. He did not convey that there were actually transaction records to produce as sought by United.  He said he would find out. The stipulation states that Defendants will produce the responsive documents he "possess[es]." (Dkt. No. 148, p. 2) After further review, it was determined that Murphy does not possess documentation for wire transfers, checks, or deposits for the 5 accounts as demanded by United.  (*See*, Murphy Dec. ¶9)   Thus after checking, all that was had was produced.

## II.    Records of Recipient Accounts – Those in Graves Exhibit 2

First, Dr. Murphy does not possess nor have control over many of the recipient accounts that United identified and demanded documentation. (*See*, Graves Exhibit 2) The specific transactions and the third-party recipients are identified in the Declaration of Lynn Murphy. (Murphy Dec. ¶¶ 11-12) United was informed on January 31, 2020 that their demand called for accounts of third parties that Dr. Murphy does not possess. (APP24-25)

Second, the remaining limited recipient account documentation possessed by Dr. Murphy is not called for by the stipulation. (Murphy Dec. ¶¶11-12) Counsel raised this several times with United Counsel and suggested that he question Lynn Murphy and her son to get more clarity but that proposal was rejected.

## III.   Sanctions Are Not Warranted

Because this motion should be denied, no sanctions should be awarded. *See,* Fed. R. Civ. P. 37(a)(5)(A).  First, United's motion demands documents for Dr. Murphy's accounts that he does not possess and therefore are not required by the stipulation agreed to by United. Second,

8

the motion calls for account records of accounts of third parties over which Dr. Murphy has no control and cannot produce. Finally, there is substantial justification for not turning over the transferee accounts that received money from the brokerage accounts already produced, as shown above, as these accounts are not traced to United money involved in this case. Sanctions should not be ordered where "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii) and (iii)  A motion is substantially justified if, "there is a 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested action].' " *De Angelis v. City of El Paso*, 265 Fed. Appx. 390, 398 (5th Cir. Feb. 18, 2008) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)(brackets in original).  Dr. Murphy did not force United to file either of its motions. Nor did Dr. Murphy "relent" after the first motion was filed but rather United agreed to the stipulation proposed which justifiably limited their overbroad document requests; objections to which Dr. Murphy was prepared to defend at a motion hearing if the stipulation had not been reached. This second motion now again makes demands well beyond what Dr. Murphy is required to produce.  This dispute is nothing like the cases cited by Untied (Motion, p. 10).²  Substantial justification for Dr. Murphy's position has been shown.

---

²    *Janvey v. Proskauer Rose LLP*, 3:13-CV-0477-N-BQ, 2018 WL 10418492, at *10 (N.D. Tex. Mar. 6, 2018) involved a party that produced documents only after a motion to compel and order to show cause without justification and then failed to comply with the Court's prior order granting a motion to compel. In the District of Idaho case cited, the sanctioned party first delayed for months in serving initial disclosures forcing multiple informal efforts to resolve the matter, the party delayed months in responding to discovery requests at all; counsel did not respond to messages at all or stated documents would be produced and then never did so, and after six months passed and the requesting party had to file a motion to compel, 5 hours after the motion was filed, the party emailed over documents although they were incomplete; and the party likewise failed to timely respond to interrogatories and requests for admissions.  The District of Idaho found "even in its most recent production of documents, IWS has not produced a single email or other internal communication, and provides no explanation for the absence of such documents" and found that sanctions are appropriate where the party "rendered discovery a

## CONCLUSION

United's motion should be denied in its entirety.

Dated: March 11, 2019

Respectfully submitted,

MARKHAM & READ
*/s/ John J.E. Markham, II*
John J.E. Markham, II (MA BBO No. 638579)
Bridget A. Zerner (MA BBO No. 669468)
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
jmarkham@markhamread.com
bzerner@markhamread.com
*Counsel for Defendants (Pro Hac Vice)*

HORNBERGER FULLER & GARZA INCORPORATED
David W. Navarro
Cassie Garza Matheson
David Jed Williams
7373 Broadway, Suite 300
San Antonio, Texas 78209
Tel: (210) 271-1700
dnavarro@hfgtx.com
cmatheson@hfgtx.com
jwilliams@hfgtx.com
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 11, 2020, that the foregoing document was served on counsel of record by electronic mail through the CM/ECF system.

*/s/ John J.E. Markham, II*
John J.E. Markham, II

---

miserable slog" for its opponent, "forcing him at every point to make repeated demands and ultimately to file [a] motion to compel" and imposed sanctions because production was made only after the motion was filed, there was no substantial justification, and fees were justified because of the long delay in producing initial disclosures and discovery relating to damages. *Idaho Waste Sys., Inc. v. U.S.A.F.*, 1:18-CV-229-BLW, 2019 WL 4777286, at *4 (D. Idaho Sept. 30, 2019)