UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**MISSION TOXICOLOGY, LLC, et al.,**

        **Plaintiffs,**

**v.**                                  **Case No. 5:17-CV-1016-JKP**

**UNITEDHEALTHCARE INSURANCE**     **(Consolidated with**
**COMPANY, et al.,**                         **Case No. 5:18-CV-0347-JKP)**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This consolidated action involving millions of dollars in alleged damages by both sides pits a group of related insurance entities against various entities performing lab services and other involved entities and individuals. The lead case of this consolidated action arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. Plaintiffs, Mission Toxicology, L.L.C. ("Mission") and Sun Clinical Laboratory, L.L.C. ("Sun Clinical") (collectively "Plaintiffs" or "the Labs"), therein seek to recover unpaid claims from Defendants (four entities related to United Healthcare (collectively "United Defendants" or "United"))[1] on behalf of Defendants' insureds. In the member case, two of the United Defendants in the lead case sue those two labs, other entities, and several individuals for various claims asserted under state law. The consolidated action has spawned several pending motions, two of which the Court addresses in this Memorandum Opinion and Order: (1) *United's Motion for Summary Judgment on the Labs' ERISA Benefits Claim* (ECF Nos. 170 (redacted) and 178 (unredacted and sealed)) and (2) *United's Motion to Strike Portions of the Declarations of Randy Dittmar and Lynn Murphy (Dkt. 186)* (ECF

---

[1] Although "United" refers collectively to multiple affiliates, the Court will generally refer to United in a singular sense as United does in its briefing.

No. 209).

The motions are fully briefed, including evidence submitted by both sides.[2] The Labs have responded to both the summary judgment motion, *see* ECF Nos. 185 (redacted), 193-1 (unredacted and sealed), and the motion to strike, *see* ECF Nos. 216 (redacted), 221-1 (unredacted and sealed). United has filed reply briefs (ECF Nos. 207 and 224) to support each motion.

## I. BACKGROUND

In this action, the Labs assert a single claim against United under ERISA, 29 U.S.C. § 1132(a)(1)(B), "to recover benefits due to the assignee of the participants or beneficiaries of ERISA plans." *See* Pls.' Second Am. Compl. (ECF No. 28) ¶ 104. The Labs "act as ERISA beneficiaries by virtue of the assignment of benefits from the individual insureds who had contracts with United" and "therefore stand as beneficiaries under United plans and seek payment of claims owed under employee health and welfare benefit plans that fall within the scope of ERISA." *Id.* ¶ 9. Based upon the assignment from United's insureds, the Labs bring their ERISA claim against United to recover the insureds' benefits.[3] *Id.* ¶¶ 103-18. In an order denying a motion to dismiss, the Court previously set out a thorough background based upon the allegations of the Second Amended Complaint. *See* Order Denying Defs.' Mot. Dismiss (Dkt. # 47) (ECF No. 115). There is no reason to reiterate that background here.

---

[2] United filed an Appendix (ECF Nos. 171, 178-1 (sealed portion)) with its motion for summary judgment. The Labs have likewise supported their response with an Appendix (ECF Nos. 186 (redacted as to Exs. D through H; N through S; V; and NN through ZZ) and 193-2 (unredacted and sealed as to exhibits redacted in ECF No. 186)), which resulted in United's motion to strike Ex. W in its entirety, various specific pages of Ex. V, and various paragraphs of two declarations within the appendix. The Labs have also supported their response to the motion to strike with an Appendix (ECF Nos. 218 (redacted as to Ex. N2) and 221-2 (sealed version of Ex. N2).

[3] Although the Labs' response to the motion suggests that they might seek reimbursement as assignees of claims from a hospital and as assignees from insured members, they assert only the one claim in their Second Amended Complaint. "A claim not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). The Court thus has no occasion to consider such suggested assignment.

Like most cases, this one has both disputed and undisputed facts. One disputed aspect is the nature and existence of a "Lab Outreach Program" in which the Labs claim to have endeavored to assist vulnerable rural hospitals at the request of the Hospitals and their management company, People's Choice Hospital, LLC ("PCH"). United describes this program as made-up and fraudulent.

Of course, the summary judgment context requires the Court to view the facts in the light most favorable to the non-movant. Regardless of existence or nature of such a program, the parties do not dispute that the Labs are non-contracted (also known as out-of-network) providers that entered into arrangements with rural hospitals, Newman Memorial Hospital ("Newman") and Community Memorial Hospital ("Community" or "CMH") (collectively "the Hospitals"), which had in-network contracts with United. Further, the parties agree that, the Labs (or referred third-party laboratories) performed most laboratory testing, not the Hospitals. And they agree that, after such testing, Integrity Ancillary Management ("Integrity"), an entity formed by the owners of Sun Clinical (Dr. Michael Murphy) and of Mission (Jesse Saucedo), would submit claims for services allegedly provided by the Labs to beneficiaries of ERISA plans administered or insured by United on behalf of, and using the names and billing credentials, of the Hospitals. Although the submitted claim forms list the names and credentials of the Hospital providers rather than the Labs' names and credentials, the Labs provide declarations and deposition testimony that Integrity also submitted the claims on behalf of the Labs. United vigorously disputes that fact.

United's ERISA plans establish administrative remedies for members receiving an adverse benefit determination. These remedies include submitting an appeal within 180 days of a claim denial. With respect to service providers, United also has a two-step administrative remedy regarding denied claims – seeking reconsideration of the denial and appealing the decision. United

3

contends that the Labs have failed to exhaust their administrative remedies because they have nei-

ther submitted any claim nor any appeal at issue in this action. While recognizing that United's

required administrative remedies "state what they state," the Labs dispute the factual assertion that

they have not submitted any claims or appeals. And this dispute lies at the heart of United's motion

for summary judgment. Furthermore, some of the Labs' evidentiary support is the crux of the

motion to strike. Both motions are fully briefed and ripe for ruling. The Court will first address the

motion to strike before considering the summary judgment motion.

## II. MOTION TO STRIKE

Through its motion to strike, United attacks the Labs' evidentiary support on two fronts:

(1) untimely disclosure relying on Fed. R. Civ. P. 26(a), 26(e), and 37(c)(1) and (2) inadmissible

evidence. It seeks to strike Exhibit W entirely, specific pages of Exhibit V, and specific paragraphs

of two submitted declarations – paragraphs 7, 8, 9, and 2 of a declaration from Randy Dittmar, an

employee of Mission and Integrity who provided information technology ("IT") services on their

behalf, and paragraphs 42 to 50 of a declaration from Lynn Murphy ("LM"), CEO of Integrity and

wife of Dr. Murphy. Exhibit W is a spreadsheet Dittmar attaches to his declaration (ECF No. 186-

4) that he created from notes of Integrity employees to identify thousands of claims denied by

United. LM attaches Exhibit V to her declaration (ECF No. 186-2) while also relying on Exhibit

W in some respects. Exhibit V consists of a few Fax cover pages that contain the word "appeal"

and medical records that LM assembled.

"Prior to December 1, 2010, the proper method by which to attack an affidavit was by filing

a motion to strike," but amendments to the Federal Rules of Civil Procedure changed that practice.

*Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012)

(per curiam). "As amended in December 2010, Fed. R. Civ. P. 56(c)(2) makes motions to strike

unnecessary to challenge evidence presented in the summary judgment context." *Silo Rest. Inc. v.*

*Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 569 (W.D. Tex. 2019) (quoting *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2018 WL 6181493, at *8 n.8 (N.D. Tex. Nov. 27, 2018)). Nevertheless, courts may strike presented evidence as a sanction under Fed. R. Civ. P. 37(c)(1) when circumstances warrant such a sanction. *Davidson v. AT&T Mobility, LLC*, No. 3:17-CV-0006-D, 2018 WL 1609756, at *1 (N.D. Tex. Apr. 3, 2018); *Campbell v. McMillin*, 83 F. Supp. 2d 761, 765 (S.D. Miss. 2000).

Whether to exclude evidence under Rule 37(c)(1) lies within the Court's sound discretion. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004). Under Rule 37(c)(1), when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." While Rule 37(c)(1) is intended to provide "a strong inducement for disclosure of material" and "gives teeth to the Rule 26(a) disclosure requirements by forbidding, during any part of the case, the use of information required to be disclosed by Rule 26 that is not properly disclosed," courts may impose other appropriate sanctions in addition to or in lieu of the "self-executing" and "automatic" preclusion sanction. *Current v. Atochem N. Am., Inc.*, No. W-00-CA-332, 2001 WL 36101282, at *2 (W.D. Tex. Sept. 18, 2001) (quoting in part Fed. R. Civ. P. 37 advisory committee's note).

Rule 37(c)(1) sets out a two-step analytical process that starts with determining whether a party has failed to make a required disclosure or supplementation and, if so, whether that party has shown substantial justification for the failure or that the failure is harmless. "The party seeking Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information." *Coene v. 3M Co.*, 303 F.R.D. 32, 42 (W.D.N.Y. 2014). Once that burden is satisfied, Rule 37(c)(1) implicitly places the burden "on the party facing sanctions to prove harmlessness"

or substantial justification. *See Current*, 2001 WL 36101282, at *2. To evaluate substantial justi-fication and harmlessness, courts examine the following "factors: (1) the importance of the evi-dence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Davidson*, 2018 WL 1609756, at *1.

Although United quotes part of Fed. R. Civ. P. 26(a)(1)(A)(ii) at the beginning of its legal standard, it is clear that United premises its motion to strike on alleged failures of the Labs to produce or disclose documents during discovery. It argues that, although discovery commenced in 2018, the Labs never produced the documents attached to the declarations or supplemented its discovery responses. Disclosure and discovery obligations differ materially and Rule 37(c)(1) only applies to failures to disclose under Rule 26(a) or supplement under Rule 26(e). In their response to the motion to strike, the Labs point out that they described documents in their initial disclosures that would include the documents sought to be struck. The Labs further state that they had to locate appeals records from Integrity to oppose the motion for summary judgment now before the Court.

Based on the information now before it, the Court finds that United has not shown that the Labs failed to make a disclosure required by Rule 26(a) or any supplementation required by Rule 26(e). To comply with Rule 26(a)(1)(A)(ii), parties do not need to produce physical documents. Disclosing parties may satisfy that rule by describing categories and location of documents. Fur-thermore, the disclosure obligation under Rule 26(a)(1)(A)(ii) is limited to items in the disclosing parties' possession, custody, or control. United alleges a failure to supplement an interrogatory response, but makes no effort to show that the Labs had "learn[ed] that in some material respect [their] response [was] incomplete or incorrect" as required by Rule 26(e)(1) to prompt an obliga-tion to supplement. Notably, the Labs had asserted objections to the interrogatory in their response

6

and United took no steps to compel any additional response. Absent a failure to disclose or supplement, there is no basis to address whether the alleged failure was substantially justified or harmless. For these reasons, the Court finds no failure which warrants sanctions under Rule 37(c)(1) and thus denies the motion to strike to the extent it relies on that rule.

To the extent United relies on the inadmissibility of the proffered evidence, the Court easily resolves the motion against United by denying the motion while considering the filing as United's Rule 56(c)(2) objections. *See Silo Rest. Inc.*, 420 F. Supp. 3d at 570. Such denial typically means that the Court will rule on asserted objections as necessary to resolve the summary judgment motion. *See id.* In this instance, however, the Court has no reason to consider the asserted objections.

### III. MOTION FOR SUMMARY JUDGMENT

United presents a single, legal basis for seeking summary judgment. It argues that the Labs have failed to exhaust their administrative remedies. In response, the Labs argue that they did exhaust such remedies for numerous claims and that they are excused from pursuing such remedies for their claims in this action on grounds of futility. The arguments of the parties will first require the Court to determine who filed the claims and appeals relative to the exhaustion issue. And after addressing that issue, the Court will address whether the futility exception to exhaustion applies on the facts of this case.

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and

---

[4] The summary judgment standard "remains unchanged" despite 2010 amendments to Fed. R. Civ. P. 56 that replaced "issue" with "dispute." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.). Although the standard remains the same, the Court utilizes the amended terminology even when relying on caselaw that predates the amendments.

facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the ERISA context, exhaustion is an affirmative defense and not a jurisdictional bar. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308-09 & n.57 (5th Cir. 2008); *Martinez v. Superior Healthplan, Inc.*, No. SA-16-CA-870-XR, 2017 WL 10821037, at *7 (W.D. Tex. Sept. 26, 2017). When seeking summary judgment on an affirmative defense, the movant "must establish beyond peradventure" each essential element of the defense. *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986); *Kirkindoll v. Nat'l Credit Union Admin. Bd.*, No. 3:11-CV-1921-D, 2014 WL 7178005, at *3 (N.D. Tex. Dec. 17, 2014) (asserting same principle in case involving exhaustion under ERISA).

When considering a motion for summary judgment, courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Once the

movant has carried the burden to establish all elements of the exhaustion defense, the burden shifts to the non-movant to establish an exception to exhaustion or a genuine dispute of material fact as to exhaustion. With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234 (citation omitted). Additionally, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

**B. Summary Judgment Analysis**

United argues that it is entitled to summary judgment because the Labs have not exhausted their administrative remedies. The Labs argue that they filed numerous claims and appeals and that any failure to exhaust should be excused as futile.

In general, the parties agree on the basic facts. However, they disagree as to whether Integrity submitted the claims and appeals on behalf of the Labs, in contrast to simply on behalf of the Hospitals. The parties also disagree as to whether the futility exception to exhaustion applies on the facts.

Relying on paragraphs 43 and 53 of the Second Amended Complaint, United asserts that the Labs did not submit to United any claims at issue in this action. They further assert that the Labs did not appeal any adverse benefit decision for any claim for which they seek ERISA benefits in this action. But paragraph 43 does not support the alleged fact in any way. And paragraph 53 merely states: "Plaintiffs, as contractors of Newman and CMH, performed medically necessary Laboratory Services for United members that were billed by Newman and CMH, and their

respective billers, to United." This paragraph does not preclude a factual finding that the Labs submitted claims through their authorized agent, Integrity, which also happened to be the Hospitals' biller.

Although United contends that claims and appeals were only pursued by Integrity on behalf of the Hospitals, the Labs counter United's position with evidence that they submitted claims and appeals through Integrity, their agent and authorized representative. In his declaration, Dr. Murphy, owner of Sun Clinical, avers that (1) in 2015, the Labs formed a billing company, Integrity, to provide billing services on their behalf; (2) Integrity was authorized to submit claims and pursue appeals to United as an authorized representative of the Labs and the Hospitals; and (3) the Labs had been assigned rights to pursue claims on behalf of patients and Newman. Decl. Dr. Murphy (ECF No. 186-1) ¶¶ 5, 20. Saucedo, owner of Mission, reiterates that (1) "Integrity handled the billing and collections for the Lab Outreach Program"; (2) Mission authorized Integrity "to handle the submission of claims to United and to pursue appeals as appropriate thereafter as an agent and authorized representative of Mission (as well as of Sun and the hospitals) on claims billed and submitted through the Lab Outreach Program" and (3) "Integrity maintained the records of billing claims and of any appeals in its regular course of business on behalf of Mission." Decl. Saucedo (ECF No. 186-3) ¶ 10. Similarly, the CEO of Integrity (L. Murphy) avers that (1) "Integrity handled billing for laboratories and hospitals, which included submitting claims and appeals seeking reimbursement for services performed from private insurance payers" and (2) when she worked at Integrity, the company handled billing claims for the Hospitals as part of their Lab Outreach Program managed by PCH. Decl. Murphy ¶ 4.

Under 29 U.S.C. § 1133(2), every ERISA plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the

appropriate named fiduciary of the decision denying the claim." And in the Fifth Circuit, those "seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). But the Fifth Circuit "has recognized an exception to the affirmative defense of failure to exhaust administrative remedies when such attempts would be futile." *Id.* (citing *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 232 (5th Cir. 1997)).

The exhaustion "requirement is not one specifically required by ERISA," but courts uniformly apply it "in keeping with Congress' intent in enacting ERISA." *Hall*, 105 F.3d at 231. Exhaustion serves several purposes, including "minimizing the number of frivolous ERISA suits, promoting the consistent treatment of benefit claims, providing a nonadversarial dispute resolution process, and decreasing the time and cost of claims settlement." *Id.* In addition, "the requirement also serves to provide a clear record of administrative action if litigation should ensue, and to assure that judicial review is made under the arbitrary and capricious standard, not de novo." *Id.*

United has the burden of proof regarding the affirmative defense of exhaustion of remedies. *Kirkindoll v. Nat'l Credit Union Admin. Bd.*, No. 3:11-CV-1921-D, 2014 WL 7178005, at *12 (N.D. Tex. Dec. 17, 2014). But, when an ERISA plaintiff has failed to exhaust administrative remedies, that party has the burden to establish an applicable exception to the exhaustion requirement. *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559-60 (5th Cir. 2004). It lies within the Court's sound discretion as to "whether plaintiffs have exhausted their administrative remedies under ERISA and can proceed with a lawsuit." *Harris v. Trustmark Nat'l Bank*, 287 F. App'x 283, 294 (5th Cir. 2008) (per curiam) (citing *Hall*, 105 F.3d at 231).

In this case, the parties do not dispute that the relevant ERISA plans include appeal procedures for denied claims. As reflected in a Certificate of Coverage attached to the Second Amended

11

Complaint, that appeal process typically requires a formal, written request to appeal and the "request for an appeal should include:" (1) the name and identification number of the patient, (2) date of medical services, (3) name of the provider, (4) reason for paying the claim, and (5) any written information to support claim payment. *See* ECF No. 28-2 at 82. Furthermore, the first appeal must be made within 180 days of the claim denial. *Id*.

United asserts that "[t]hese types of procedures are typical in the plans [it] offers." Mot. at 6. To support that assertion, it provides a sealed Summary Plan Description which shows that (a) if United makes an adverse benefit determination, the member or authorized representative must submit an appeal within 180 days of receiving notice of the determination, (b) that appeal should include the five matters listed in the preceding paragraph, (c) if United upholds the denial, the member may file a second appeal within 60 days from receiving the first appeal determination, (d) if United again upholds the denial, the member may request external review of United's determination, and (e) a member "cannot bring any legal action against" United to recover reimbursement until 90 days after the member has "properly submitted a request for reimbursement . . . and all required reviews of the [the member's] claim have been completed." App. 134-37.

Furthermore, the parties agree that United's Care Provider Administrative Guides establish administrative remedies with respect to denied claims for providers. *See* App. at 116-23 (Exs. L and M, ECF Nos. 170-13 and 170-14). These guides provide a two-step process for providers to (1) seek reconsideration of denied claims and (2) appeal the reconsideration decision. *See* App. 117, 121.

Several other important facts are undisputed. First, the Labs are valid assignees of the plan beneficiaries, i.e., the patients or insureds. Second, the Labs are also out-of-network providers of lab services. Third, Integrity submitted claims and appeals on behalf of the Hospitals. The parties'

12

views diverge, however, with respect to whether Integrity submitted claims and appeals on behalf of the Labs. And that divergence occurs even though there is no apparent dispute that Integrity was authorized to act on behalf of the Labs as well as the Hospitals.

Although the parties hotly contest whether Integrity submitted any claims or appeals on behalf of the Labs, that dispute is immaterial unless Integrity submitted claims or appeals on behalf of the Labs through the ERISA plans and the patients' assignments of claims. This is an important distinction that the Labs apparently disregard. And there is simply no evidence to support such submissions. At most, there is evidence that the claims and appeals submitted by Integrity were both on the behalf of the Hospitals and on behalf of the Labs. But there is no reasonable basis to infer that the Hospitals presented their claims on behalf of the patients or that the Hospitals presented their claims and appeals through any administrative process set out in an ERISA plan. Without that reasonable inference, the Court similarly cannot reasonably infer that the same claims and appeals made by Integrity for the Labs were in accordance with any ERISA plan of any patient through any assignment.

To show exhaustion of administrative remedies for some claims, the Labs want to piggyback on the claims submitted on behalf of the Hospital. While the Court declines to find at this time that such piggybacking is precluded in all circumstances, it does not work here, even assuming without deciding that the Hospital claims and appeals submitted by Integrity can also be attributed to the Labs. It necessarily fails here because providers such as the Hospitals are seeking payment of claims on their own behalf, not on behalf of any patient through an assignment of claims. Furthermore, as shown by the typical ERISA plans, providers and patients must pursue different administrative processes even though each process starts with the filing of a claim.

No one disputes that this case involves thousands of claims denied by United. Technically,

it would seem that, to establish non-exhaustion, United would need to show that, for each denied claim, the Labs failed to exhaust the administrative remedies available under the plan for that insured. While the Labs agree that the plans "state what they state," they dispute United's position that they have wholly failed to file any claims or appeals.

Because the Labs pursue their ERISA claims as assignees of the patients, this case seems to (1) make the typical process set out in the Certificate of Coverage and Summary Plan Description as the pertinent process and (2) present no reason to consider the remedies set out in United's Care Provider Administrative Guides. But, as the prior paragraphs indicate, it is apparent that United contends that the claims submitted and appealed on behalf of the Hospitals, fall under administrative remedies for providers, not patients. There is no evidence that the Hospitals submitted any claim on behalf of the patients and the Court cannot reasonably infer any such submission from the facts presented. Thus, the Labs' attempt to piggyback on the claims submitted on behalf of the Hospitals is likewise insufficient to show exhaustion of administrative remedies for claims of the patients.

As United points out, this consolidated action is not the only pending case involving the Labs. In *Aetna Inc. v. The People's Choice Hospital, LLC*, No. SA-18-CV-0323-OLG, the Court partially granted a motion to dismiss and thus dismissed various counterclaims asserted by the Labs. *See* ECF No. 171-2 (copy of order). The Court specifically dismissed a similar ERISA claim for failure of the Labs to exhaust administrative remedies. *See id.* The Labs attempt to distinguish *Aetna* on grounds that the dismissal occurred at the pleading stage based solely on their allegations, rather than on factual evidence presented on summary judgment. But the submitted evidence in this case does not create a genuine dispute of material fact regarding whether the Labs filed any claims or appeals on behalf of the patients.

United has carried its summary judgment burden to show that the Labs failed to exhaust their administrative remedies. The Labs rely on claims and appeals filed on behalf of the Hospitals to exhaust their administrative remedies as providers. The Labs provide no evidence that they pursued any administrative remedies available to the patients who assigned their claims to them. And their reliance on the claims and appeals submitted on behalf of the Hospital is insufficient to show that they pursued any claim or appeal on behalf of any patients who had assigned their claims to the Labs. Because the Labs have not pursued any claim on behalf of the insureds through their assignment of claims, United has no need to show the Labs failed to exhaust administrative remedies available under each plan for each insured.

Although United has carried its burden to show an exhaustion failure, the Labs rely on a futility exception to exhaustion. If they can establish that exception, they may avoid summary judgment despite their failure to exhaust. But, as the Fifth Circuit stated long ago, courts are to excuse exhaustion failures "only in the most exceptional circumstances." *Davis v. AIG Life Ins. Co.*, 85 F.3d 624, No. 95-60664, 1996 WL 255215, at *2 (5th Cir. Apr. 26, 1996) (citing *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 433 (D.C. Cir. 1994)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, No. 4:09-CV-2556, 2018 WL 3738086, at *9 (S.D. Tex. Aug. 7, 2018), *aff'd*, 952 F.3d 708 (5th Cir. 2020), *cert. filed*, No. 20-378 (U.S. Sept. 24, 2020). Although futility is a recognized exception, a claimant does not qualify for the exception absent a showing that there is a "*certainty* of an adverse decision." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000) (quoting *Commc'ns Workers of Am.*, 40 F.3d at 433). In addition, a claimant's "failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004).

In the *Aetna* case, the Court found that the Labs could not avail themselves of the futility exception because their allegations clearly demonstrated that the Labs neither filed any claim with Aetna nor engaged in the appeal process. *See* ECF No. 171-2 at 13. It also recognized possible outcomes other than claim denial had the Labs pursued the administrative remedies on the insured's behalf as assigned to them. *See id.* at 14 & n.7 (indicating that Aetna may have reimbursed the Labs "for lab services at a rate lower than the one that allegedly applied to lab services performed" at a hospital).

Although *Aetna* addressed exhaustion at an earlier stage of litigation, it remains persuasive authority for finding that the Labs' failure to file any pertinent claim or appeal precludes them from relying on the futility exception. Without a relevant prior claim denial, one is left only with speculation as to how United would have handled a claim submitted by the Labs on behalf of the insureds who had assigned their claims. The Labs place heavy reliance on a statement made to Newman that United would deny all future claims because Newman did not perform the service and did not provide a proper proof of loss. But, even if that statement can be attributed to United (the statement is not from any United affiliate sued by the Labs), it was clearly made to Newman because it sought payment for services not performed by the hospital. That differs materially from the Labs submitting a similar claim on behalf of a patient who had obtained services from one of the Labs.

Here, it is undisputed that the Labs have not exhausted any claim sought in this action on behalf of any insured. There is certainly some dispute as to which entity filed claims with United and appealed denials of such claims. But that dispute is immaterial. Regardless of which entity filed claims and appealed denials, the claims submitted were not on behalf of any insured through the assignment of benefits. And, because the Labs have pursued no claim on behalf of their patients

16

through such assignment, the Labs have failed to carry their burden to show that the futility exception to exhaustion applies under the facts here. Consequently, the Labs are barred from pursuing their ERISA claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** *United's Motion for Summary Judgment on the Labs' ERISA Benefits Claim* (ECF Nos. 170 (redacted) and 178 (unredacted and sealed)) and **DENIES** *United's Motion to Strike Portions of the Declarations of Randy Dittmar and Lynn Murphy (Dkt. 186)* (ECF No. 209). Based on the summary judgment ruling, the lead case of this consolidated action is fully resolved. Accordingly, by separate order the Court will deconsolidate the two cases and enter final judgment in favor of the defendants in the lead case.

**SIGNED this 4th day of November 2020.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**

17